ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, PLAINTIFF IN ERROR, v. ETHEL CROSBY, BY NEXT FRIEND, J. W. CROSBY, DEFENDENT IN ERROR.

1. While each error relied on must be separately and distinctly specified, an assignment predicated upon the overruling of a demurrer to a declaration is not required to designate or specify the particular grounds of the demurrer relied on, though the plaintiff in error will be confined to the grounds stated in the demurrer and argued in the appellate court, and no other grounds will be considered unless there is an omission in the declaration of allegations of substantive facts which are essential to a right of action, so that the declaration wholly fails to state a cause of action.

2. A declaration in an action against a railroad company, seeking to recover damages for personal injuries occasioned by the alleged negligence of such road, is not demurrable because it alleges "that while said passenger cars were standing still, and while the plaintiff was on the platform extending between said passenger

cars and connecting the same, the defendant negligently
and carelessly" did the things which occasioned the
injury.

3. Merely being on the platform of a train, which is not in
motion but standing still, is not such negligence of the
plaintiff *per se* that as a matter of law it would pre-
clude any recovery for injuries sustained by the person
so being on the platform, which injuries were occa-
sioned by the alleged negligence of the defendant cor-
poration.

4. Because the declaration in an action against a railroad
company seeking to recover damages for personal in-
juries occasioned by the alleged negligence of such road,
alleges that plaintiff was on the platform of one of the
passenger cars while such cars were standing still, dur-
ing an interval of waiting at a regular station for the
arrival of another train, it is by no means implied
therein or inferable therefrom that such plaintiff had
voluntarily selected such a position to stand or ride on
when the train was ready to start in motion again.

5. As a matter of law, a person is not required to keep a
seat in a passenger coach of a railroad company from
the time it is first taken until the train comes to a final
stop at the place of such passenger's destination. The
causes which may justify a passenger, without the impu-
tation of fault on his part, as against the carrier, in
leaving his seat and going outside the car, and occupying
temporarily a position upon the platform, while the cars
are standing still, must be dependent upon the occasion
and circumstances which induce or impel him to do so.

6. A passenger cannot be held to be guilty of contributory
negligence as a matter of law in quitting his seat in
the coach of a passenger train, while the train is at a
halt at a regular station, during an interval of waiting

26—S C

for the arrival of another train, and going on the platform of the coach.

7. It is elementary that a demurrer admits the truth of all such matters of fact as are sufficiently pleaded.

8. The granting or denial of a motion for the compulsory amendment of a pleading, based on Section 1043 of the Revised Statutes of 1892, is a matter resting within the sound judicial discretion of the trial court, since such court must determine whether or not the pleading so sought to be reformed is "so framed as to prejudice or embarrass or delay the fair trial of the action," and the ruling of the trial court thereon will not be disturbed by an appellate court, unless it is plainly made to appear that there has been an abuse of this judicial discretion.

9. In an action seeking to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, the plaintiff is confined to the allegations of the declaration, and no error is committed by the trial court in overruling a motion of defendant for the compulsory amendment of the declaration, seeking to require the plaintiff to separate the acts of negligence complained of and to state the same specifically in separate and distinct counts, especially when such trial court in its order denying such motion stated therein "that the plaintiff is limited in the trial of said cause to the several specific acts of negligence set forth and alleged in said declaration, and that the same are properly set forth in one count." If the plaintiff was not so confined or limited at the trial in the introduction of evidence, in accordance with such order, while such matters might form proper bases for other assignments, they are not available in support of an assignment based upon the denial of the motion for a compulsory amendment of the declaration.

10. A special plea tendering an issue covered by the plea

of not guilty should be stricken out either on motion of plaintiff or by the court of its own motion, under Section 1043 of the Revised Statutes of 1892, as tending to embarrass the trial, though such a plea is not for that reason demurrable. There is a difference in the functions performed by a motion to strike out and a demurrer and one cannot be used interchangeably for the other. The distinction between them should be observed.

11. Where a demurrer is interposed to pleas tendering an issue covered by the plea of not guilty, when a motion to strike out would have been the proper method of attack, but no such point is made either below or in the appellate court, the sustaining of the demurrer will be considered harmless error, as the court had the power and it was its duty to strike out such pleas *sua sponte*, and as it also appears and is admitted by defendant that "on demurrer being sustained, the defendant pleaded substantially the same facts as constituting contributory negligence on the part of the plaintiff," and such pleas of contributory negligence were permitted to stand, a demurrer thereto being overruled.

12. In an action against a railroad company seeking to recover damages for personal injuries caused by the alleged negligence of such road, special pleas interposed by the defendant to the effect that the injury complained of was caused entirely by the fault, negligence and carelessness of plaintiff, and by no carelessness, negligence or fault on the part of defendant, simply amounts to the general issue.

13. In an action against a railroad company seeking to recover damages for personal injuries caused by the alleged negligence of such road, an allegation in the declaration that plaintiff was a passenger on the train of defendant is simply one of the facts stated in the inducement and such fact was not put in issue by the plea of not guilty, a special plea being required to that

effect. This being true, no error was committed by the trial court in sustaining objections of plaintiff to two questions propounded by defendant on the cross-examination of the mother of plaintiff, who had testified on the direct examination that she and her daughter were passengers on the train of defendant on the date of the injury to plaintiff, as to whether witness had bought two tickets or one, and as to whether her daughter, the plaintiff, had a ticket as a passenger, there being no issue in the case as to the status of the plaintiff as a passenger.

14. It is the province of the trial court to determine whether or not a witness offered as an expert has such qualifications and special knowledge as to warrant his testifying as an expert, and the decision of such trial court is conclusive upon this point, unless it appears from the transcript to have been erroneous or to have been founded upon some error in law.

15. A witness who has testified that he was in charge of the train as conductor on the day the injury was occasioned to plaintiff, for which damages are sought to be recovered against the railroad for its alleged negligence, that he had had long experience as brakeman and conductor and his service had made him familiar with the general equipment of passenger trains, and that in 1902, the year in which the injury happened to plaintiff, a railroad ordinarily well equipped used appliances at the point where passenger cars came together or connect, or plates or buffer irons at such points for the purpose of safety, and that during such year defendant used two kinds of plates or irons, one kind flat and one round, such two kinds of plates or irons being in common use at that time on railroads that were well equipped, may properly be held to fall within the class of witnesses designated skilled witnesses. As a railroad man possessing such skill and experience, it was not error to overrule objections interposed by defendant to questions

propounded by plaintiff to witness seeking an expression
of opinion from him as to whether or not if such appli-
ances, buffer irons or buffer plates had been on the cars
in question and had been proper appliances, the injury
could have happened.

16. General objections to evidence proposed, without stating
the precise ground of objections, are vague and nugatory,
and are without weight before an appellate court, unless
the evidence objected to is palpably prejudicial and
inadmissible for any purpose or under any circumstances,
when a general objection thereto is sufficient.

17. When a witness on behalf of defendant has testified on
his direct examination as to the habit and custom of
the engineer in charge of the engine attached to defend-
ant's train on the day the injury is alleged to have been
occasioned plaintiff by reason of the negligence of de-
fendant, in making couplings, it is not error for the trial
court to permit plaintiff, on the cross-examination of
such witness, to ask him whether or not such engineer
was in the habit of making couplings with unusual force
or violence in shifting trains.

18. Any exclamation which may have been made by the mother
of the plaintiff, who was an infant and traveling with her
mother, at or immediately after an injury which hap-
pened to plaintiff, is admissible in evidence in an action
brought by plaintiff against a railroad company, seeking
to recover damages for such injury by reason of the
alleged negligence of defendant, as a part of the *res
gestae*, just like any other fact or circumstance forming
a part thereof, and it was error to sustain an objection of
plaintiff to a question propounded by defendant to a
witness, by which it was sought to be elicited that,
within from thirty to sixty seconds after the injury oc-
curred, the mother of plaintiff voluntarily explained and
stated in the hearing of witness that the accident was
all her fault, although proof of such a declaration would

not destroy plaintiff's right of action or prevent a recovery against defendant, for the reason that, in an action by a child for damages for an alleged injury, the negligence of the parent cannot be imputed to the child so as to prevent a recovery.

19. No error was committed in sustaining objections of plaintiff to the following question propounded to a witness: "Please state the contents or wording on the sign then on the coaches which you say you have invariably observed in your experience as a conductor on that line," when the witness had previously testified that he could not say whether there was any admonishment on the car of the defendant, on which the accident occurred, with reference to passengers standing upon the platform and that he did not know whether such car had any sign on it or whether or not all passenger coaches have a sign on them.

20. No error was committed in excluding as evidence the rule book of a defendant railroad company in an action against it seeking to recover damages for personal injuries alleged to have been caused by its negligence, offered for the special purpose of having a certain rule therein read relating to the duty of conductors, when it had been shown that such rule was in force at the time of the injury.

21. The evidence adduced in an action should be confined to the issues, and a witness cannot be cross-examined as to any fact which is collateral or irrelevant to the issue merely for the purpose of contradicting him by other evidence if he should deny it, thereby to discredit his testimony.

22. The trial court is authorized to regulate the order of the introduction of evidence, and its discretion in this matter will be interfered with by an appellate court only when clearly abused.

23. Both in an action at law and a suit in equity the *allegata* and *probata* must reciprocally meet and correspond.

24. No proper foundation having been laid therefor, either in the pleadings or other testimony, it was error to admit testimony of witnesses as to the comparative equipment of passenger trains of the defendant railroad company, in an action against it seeking to recover damages for personal injuries alleged to have been caused by its negligence, used by such road on the branch line, where such injury occurred, and the trains used by such company on one of its main lines, as to being new, efficient, modern and up-to-date, as the tendency of such testimony would be to confuse, mislead and prejudice the jury, and such error cannot be said to be without injury.

25. Objections are properly sustained to questions which seek to elicit testimony outside of the issues in an action.

26. Where an instruction, as far as it goes, states a correct proposition of law, but is defective because it fails to qualify or explain the proposition it lays down in consonance with the facts of the case, such defect is cured if subsequent instructions are given containing the required qualifications or exceptions. It is not required that a single instruction should contain all the law relating to the particular subject treated therein.

27. In determining the correctness of charges and instructions, they should be considered as a whole, and, if as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail.

28. In passing upon a single instruction or charge it should be considered in connection with all the other instructions and charges bearing on the same subject, and if, when thus considered, the law appears to have been fair-

ly presented to the jury, an assignment predicated upon the giving of such instruction or charge must fail, unless under all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury.

29. In determining the correctness of charges and instructions they should be considered as a whole, but where a special charge or instruction in itself announces a patently erroneous proposition of law, it must affirmatively and clearly appear that the presumptive harm caused thereby has been entirely removed, or the judgment should be reversed.

30. No error was committed in giving the following instruction: "A passenger on a railroad train, after said train has stopped at a regular station, has a right to go upon the platform of the coach in which the said passenger may be and within the time allowed by the rules of the company for the stopping of said train at said station, providing the said passenger being on the said platform does not interfere with the proper management of said train and with persons alighting therefrom or getting thereon, and that it is not negligence *per se* to do so, and that the mere fact of the passenger being upon the platform under such circumstances does not constitute negligence on the part of the passenger," especially when said instruction is considered in connection with the other instructions and charges given bearing upon the same subject.

31. Where an instruction or charge contains two or more distinct propositions of law, and such instruction or charge is excepted to as an entirely, such an exception must fail if any one of such propositions is correct.

32. A requested instruction, even though it may embrace correct legal principles, is properly refused, when such

principles have been fully covered by other instructions or charges given in the case.

33. Chapter 4071, Laws of 1891, creates the presumption that a person injured by the operation of a railroad was thus injured through the negligence of such road, but this presumption ceases when the railroad company has made it appear that its agents have exercised all ordinary and reasonable care and diligence. In the presence of such proof by the railroad company, if the same has been adduced, the jury do not take any such presumption with them to the jury-room in weighing the evidence and coming to a determination, as such statute does not create such a presumption as will outweigh proofs, or that will require any greater or stronger or more convincing proofs than any other question at issue. All that such statute does is to cast upon the railroad company the burden of showing that its agents exercised all ordinary and reasonable care and diligence, and here the statutory presumption ends.

34. No error was committed in refusing to give the following instruction: "That the platform of the cars is intended for the use of passengers in getting on and off the cars, and for no other purpose, and passengers have no right to stand or loiter upon the platform, either while the cars are in motion or while standing still, and if they do so they assume all risks incident to the regularly and orderly operating of the train," the evidence in the case having established that while the train of defendant was standing still at a regular station during an interval of waiting for the arrival of another train, during which interval the engine was detached from the passenger coaches and moved to another track, the plaintiff, who was between nine and ten years of age, and her mother, finding it hot and uncomfortable in the coach and being unable either to raise the windows or to pull down the blinds in the coach, went out upon the platform and stood thereon, in order that they might be cooler

and more comfortable. The law relating to the subject had already been more correctly stated in other instructions and charges.

This case was decided by Division A.

Writ of error to the circuit court for Marion county.

The facts in the case are stated in the opinion of the Court.

R. A. BURFORD, for Plaintiff in Error.

R. L. ANDERSON, for Defendant in Error.

SHACKLEFORD, C. J.: On the 24th day of December, 1903, the defendant in error brought an action against the plaintiff in error in the circuit court for Marion county seeking to recover damages for personal injuries received by defendant in error by reason of the alleged negligence of the plaintiff in error. Trial was had before a jury, resulting in a verdict for the sum of $5,000 in favor of the plaintiff, upon which judgment was entered which the defendant seeks to have reviewed here by writ of error, returnable to the last term.

The declaration is as follows:    "The plaintiff, Ethel Crosby, an infant of the age of ten years, by J. W. Crosby, her next friend, sues the defendant, the Atlantic Coast Line Railway Conpany, a corporation created and existing under and by virtue of the laws of the State of Virginia, which has been summoned, &c., and says that the defendant is a common carrier, engaged in said county and state in the regular business of operating railroad lines and thereon by its servants and employees operating railroad

trains and carrying and transporting passengers and freight for hire and as such on September 19th, 1902, and before and since that date, was in possession and control of the certain line of railroad track extending from Ocala to Dunnellon in said county, and the certain engines, cars, machinery and appliances used thereon and operated therewith, commonly known and designated as the Silver Springs, Ocala and Gulf Railroad, and operated and used said track, cars, engines, machinery and appliances in carrying on its said business.

On the said 19th day of September, 1902, the plaintiff was a passenger on a certain train operated on said line of railroad by the defendant, and the defendant for a certain sum of money to it then paid, received the plaintiff as a passenger and then and there undertook and agreed to safely carry the plaintiff on said train from Ocala to Dunnellon on said line of railroad. Before reaching Dunnellon and at a regular station of the defendant on said road known as Juliette, the train on which plaintiff was a passenger was stopped by defendant and there waited for a long time, to wit: about thirty minutes, for the arrival at Juliette of another train on defendant's railroad.

Plaintiff further says that when said train was stopped, as aforesaid, at Juliette, the locomotive engine which was attached to and drawing said train was by defendant uncoupled and detached from the cars provided for and used by the passengers on said train and moved, with a car or cars which it was drawing, to another railway track or tracks of the defendant and that the car in which said plaintiff was a passenger and other cars carrying passengers, on said train, were left standing at said station called Juliette; that while said passenger cars were so standing still, and while the plaintiff was on the platform extending

from and between said passenger cars and connecting the same, the defendant negligntly and carelessly caused said locomotive engine to be run backward with great force and violence against said passenger cars; so standing on said track, and thereby caused the plaintiff to be thrown over and between the platforms of said passenger cars, and the plaintiff's right foot to be caught between the buffers of said passenger car platforms, whereby the plaintiff's right foot was wounded, crushed, broken and greatly and permanently injured.

Plaintiff avers that the defendant and its agents and servants did not exercise all reasonable care and diligence in running its said locomotive engine and cars and did not use and exercise all reasonable care and diligence in running said locomotive engine · backward against said passenger cars, and that the said injury to the plaintiff was caused by the carelessness and negligence of the defendant and its agents and servants in running said engine and cars and by the failure of the defendant and its said agents to use and exercise the reasonable care and diligence required by law; that the defendant ran its said said locomotive engine against said passenger cars with great and unnecessary force and violence; that said defendant, when bringing and running its said engine against said passenger cars and when about to bring and run said engine to and against said cars, gave no signal notice or warning of the approach of said engine, or that the same would be brought or run to and against said cars; that the defendant in running its said locomotive engine and train of cars did not provide and use on and between said passenger cars a certain appliance known as a buffer iron, which said appliance is a metal plate covering the space or opening between the ends or buffers of cars used for pas-

sengers, and which appliance was and is necessary for the safety and security of passengers on railway trains, occupying the platform of the cars, and in getting on and off said cars, an in going from one car to another car on the same train, and is generally and commonly used by common carriers and railway companies as a means of protection and safety for passengers and employees on railroad trains.

By means of which negligence and want of care on the part of the defendant, its agents and servants, and by reason of which failure and refusal on the part of the defendant, its agents and servants, to exercise and use all reasonable care and diligence in running its said locomotive engine and cars, the plaintiff has sustained the injuries as aforesaid, and has lost the use of her foot, has become permanently maimed and crippled, has suffered great pain and anguish of body and mind, has been made sore and sick, and her health and strength of body have been permanently impaired, injured and damaged.

Wherefore she claims damages in the sum of twenty thousand dollars."

To this declaration the defendant interposed a demurrer, stating the substantial matters of law intended to be argued as follows:

"1. It appears from the allegations of the plaintiff's declaration that the injuries alleged to have been received by the plaintiff resulted from the carelessness and negligence of the plaintiff in voluntarily standing on the platform of the car at a place of danger apparent to any one of ordinary observation.

2. The plaintiff, in standing upon the platform of the car, voluntarily assumed the risk of danger incident to a person in such position.

3. No liability would attach to the company for injuries resulting to a passenger who voluntarily and in violation of the rule sof the company leaves the passenger coach and without necessity voluntarily stands in a position of danger on the platform of a car, and without knowledge on the part of the officers and servants in charge of the train that such passenger is in a perilous condition or situation at the time of any sudden movement of the train, and the declaration fails to allege any such knowledge on the part of the agents or servants of the defendant in charge of said train at the time of or immediately preceding the accident.

4: It appears from the allegation of plaintiff's declaration that the negligence of the plaintiff was the proximate cause of the injury complained of.

5. The plaintiff's declaration fails to state any cause of action."

At the same time the defendant filed the following motion to strike out or for a compulsory amendment of the declaration: "Now comes the defendant in the above styled cause, by its undersigned attorneys, and not waiving the general demurrer filed to the plaintiff's declaration in said cause, but insisting and relying upon the same, and moves the court to strike out the declaration, or to require the plaintiff to amend the same, because in its present form it is so framed as to prejudice, embarrass and delay the fair trial of said action, and in support of said motion the defendant makes the following specifications:

1. To require the plaintiff to separate the act or acts of negligence complained of, and to state the sam specifically in separate and distinct counts, where the acts of negligence complained of are separate and distinct within themselves.

2. To require the plaintiff to state specifically wherein the defendant did not exercise all reasonable care and diligence in running its locomotive engine and cars; and wherein the said defendant did not exercise reasonable care and diligence required by law; the general allegation in plaintiff's declaration being insufficient to advise the defendant of all the particular acts of negligence which plaintiff may rely upon for recovery.

Wherefore, the defendant, in the event the court should overrule the general demurrer filed to plaintiff's declaration, moves the court to strike the said declaration, or to compel the amendments thereto according to the specifications as above."

On the 24th day of February, 1904, the court made the following order on the demurrer and motion: "This cause came on to be heard upon the demurrer of the defendant to the plaintiff's declaration in said case, and after argument of counsel for the respective parties, and the court being advised in the premises, it is ordered that the said demurrer filed herein on the 26th day of January, A. D. 1904, be, and the same is hereby overruled, to which order and ruling of the court, the defendant excepts.

Whereupon the said cause came on to be further heard upon the motion of the defendant to strike the declaration, or require the plaintiff to amend the same, and after argument of counsel for the respective parties, and the court being advised in the premises, it is ordered that the said motion be, and the same is hereby, overruled; the court holding that the said declaration is not so framed as to prejudice, embarrass and delay a fair trial of the cause, and that the plaintiff is limited in the trial of said cause to the several specific acts of negligence set forth and alleged in said declaration, and that the same are

properly set forth in one count, to which order of the court overruling the defendant's motion the defendant did then and there except.

It is further ordered that the said defendant be, and it is hereby required, to plead to said declaration on or before the fifteenth (15th) day of March, A. D. 1904."

This order forms the basis for the first and second assignments, which are to the effect that the court erred in overruling the demurrer as well as in overruling the motion.

It is strenuously urged before us by defendant in its brief in support of the first assignment that "It appears from the allegations of the declaration that the injury was received while the plaintiff, without necessity, was voluntarily standing on the platform of the car, in a position of danger, without the knowledge or consent of the agents and servants of the defendant. Under such circumstances, the negligence of the plaintiff was the proximate cause of the injury, and in voluntarily and without necessity leaving the car provided for passengers she assumed all extra risk of danger incident to such acts and conduct upon her part. A passenger who receives an injury while standing or riding on the platform of a car cannot recover, unless it be shown there was some urgent necessity for the passenger to occupy such position, or that those in charge of the train knew of the perilous position of the passenger at the time of the accident in time to prevent it." This position was also elaborated and insisted upon by defendant in the oral argument before us, and the following authorities have been cited to us: Thane v. Scranton Traction Co., 191 Pa. St. 249, 43 Atl. Rep. 136, S. C. 6 Amer. Neg. Rep. 185; Denny v. North Carolina R. R. Co., 132 N. C. 340, 43 S. E. Rep. 847,

S. C. 30 Amer. & Eng. R. R. Cases, N. S. 146; Meyere v. Nashville, C. & St. L. Ry., 110 Tenn. 166, 72 S. W. Rep. 114, S. C. 29 Amer. & Eng. R. R. Cases, N. S. 947; Union Pac. R. Co. v. Roeser, 69 Neb. 62, 95 N. W. Rep. 68, S. C. 31 Amer. & Eng. R. R. Cases, N. S. 493; 2 Wood's Railway Law, 1157 (also see 2 Wood's Railroads, Minor's ed., 1327); 4 Elliott's Railroads, Sec. 1630; Patterson's Railway Accident Law, Sec. 272; Beach's Contributory Negligence (3rd ed.), Sec. 149; DeMahy v. Morgan L. & T. R. R. & S. S. Co., 45 La. Ann. 1329, 14 South Rep. 61, S. C. 58 Amer. & Eng. R. R. Cases, 448. We have given all of these citations our most careful consideration, bearing in mind the contention as made by defendant, both in its brief and oral argument, and have also examined quite a number of other authorities. We are also mindful of the principle established by repeated decisions of this court that a pleading is to be most strictly construed against the pleader thereof. See concurring opinion in Atlantic Coast Line R. R. Co. v. Benedict Pineapple Company, decided at the last term, and authorities therein cited.

The plaintiff contends that this assignment is indefinite, embracing several distinct matters which this court is called upon to investigate, and fails to point out the error specifically relied on, therefore violative of the rule "that each error relied on must be separately and distinctly specified—that no one assignment shall embrace more than one specification of error—and that on a failure to comply with this requirement the court will, as a general rule, refuse to consider the assignment." In support of this contention plaintiff cites 2 Cyc, 986, where the quoted rule is laid down; St. Johns & Halifax R. R. Co.

27—S C

v. Shalley, 33 Fla. 397, 14 South. Rep. 890; Hodge v. State, 26 Fla. 11, 7 South. Rep. 593; Newberry v. State, 26 Fla. 334, 8 South. Rep. 445; Estey v. Magee, 94 Iowa 197, 62 N. W. Rep. 673; Town of Waukon v. Strouse, 74 Iowa 547, 38 N. W. Rep. 408; Anheuser-Busch Brewing Association v. Oxley, 88 Iowa 699, 53 N. W. Rep. 1075; Blocker v. Schoff, 83 Iowa 265, 48 N. W. Rep. 1079. This contention is untenable. The cited decisions of this court do not sustain it. In the case of St. Johns & Halifax R. R. Co. v. Shalley, *supra*, the assignment in question was "that the referee erred in refusing to admit evidence on behalf of the defendant, and in admitting evidence on the part of the plaintiff that was inadmissible and objected to by defendant." In disposing of this assignment this court said: "The second error assigned above is entirely too general and indefinite to be considered, as it does not point out or specify what evidence, if any, was offered for the defendant and rejected by the referee, nor any that was admitted for the plaintiff over the defendant's objection. Neither does the appellant in its brief point out or specify the errors contended for in this respect. Because of the latter fact, we treat the second assignment as having been abandoned." The assignments in question in the cases of Hodge v. State, *supra,* and Newberry v. State, *supra,* were of a like nature, being based upon the admission or exclusion of evidence. The third head-note in Hodges v. State, *supra,* is that "An assignment of error which is so general and vague that the appellate court is in doubt as to what is meant by it will not be considered," and the third head-note in Newberry v. State, *supra,* is that "An alleged error will not be considered by the appellate court unless it is specially pointed out." The other cited authorities, all of which

are Iowa cases, are based upon Section 3207 of the Iowa Code of 1880, which provided that "an assignment of error must, in a way as specific as the case will allow, point out the error objected to; and that, among several points in a demurrer, it must designate which is relied on as error, and the court will only regard errors which are assigned with the required exactness." We have no such statutory provision; therefore these citations are not in point. In construing Section 1053 of the Revised Statutes of 1892, we have held that "in determining the sufficiency of a demurrer the court will be confined to the grounds stated, and will examine no others, unless they extend to an omission to allege substantive facts which are essential to a right of action or matter of defence, and which are not implied in or inferable from those which are alleged," and "that grounds of demurrer not noticed in brief of counsel for appellant who demurred may be regarded by the appellate court as abandoned." Florida Cent. & P. R. Co. v. Ashmore, 43 Fla. 272, 32 South. Rep. 832; Moore v. Lanier, 52 Fla. 353. 42 South. Rep. 462; Jacksonville Electric Co. v. Schmetzer, decided here at the present term. Also see discussion and authorities cited in concurring opinion in Atlantic Coast Line R. R. Co. v. Benedict Pineapple Co., also decided here at the last term, 42 South. Rep. 530.

Confining our attention, then, to the specific grounds of the demurrer urged before us, we must determine whether or not the declaration is defective in the specifications pointed out to us. Turning to the authorities cited by defendant, we find that the question chiefly discussed therein is the negligence, or contributory negligence, of the passenger in going upon or standing upon the platform of a *moving* train. We find that there is

great conflict in the authorities as to whether or not riding or standing upon the platform of a railroad car while the train is in motion, or in rapid motion, is negligence *per se*, such as to defeat recovery for injuries received by the passenger while occupying such a position. Some courts have held affirmatively as a matter of law that it is such negligence as will bar a recovery, while others have held it to be a question of fact for the jury to determine under all the circumstances in the case as given in evidence. A discussion of the question, and many authorities bearing thereon, will be found in the following: 6 Cyc. 653, 654; 5 Current Law, 539, 540; Moore's Carriers, 856 *et seq.*; 2 Wood's Railroads (Minor's ed.), Sec. 308; Beach's Contributory Negligence (3rd ed.), Sec. 149; Black's Law and Practice in Accident Cases, Sec. 353; Patterson's Railway Accident Law, Secs. 271, 272; 5 Amer. & Eng. Ency. of Law (2nd ed.), 678, 681. The following, among the many cases which we have examined, will prove instructive generally as to the rights and risks of passengers going, standing, or riding upon the platform of trains: Marquette v. Chicago & N. W. R. R. Co.., 33 Iowa 562, text 569, 570; Graham v. McNeill, 20 Wash. 466, 55 Pac. Rep. 631, S. C. 72 Amer. St. Rep. 121; Gerstle v. Union Pac. Ry. Co., 23 Mo. App. 361; Zemp v. Wilmington & M. R. R. Co., 9 Rich. Law (S. C.) 84, S. C. 64 Am. Dec. 763; Woods v. Southern Pac. Co., 9 Utah 146, 33 Pac. Rep. 628; Dewire v. Boston & Maine R. R., 148 Mass. 343, 19 N. E. Rep. 523; Agulino v. N. Y., N. H. & H. R. R. Co., 21 R. I. 263, 43 Atl. Rep. 63, S. C. 14 Amer. & Eng. R. R. Cas. 314, also see note on page 321; L. & N. R. R. Co. v. Head, 22 Ky. L. 863, 59 S. W. Rep. 23, S. C. 19 Amer. & Eng. R. R. Cas. 302; Augusta Southern R. R. Co. v. Snider, 118 Ga. 146, 44 S. E. Rep.

1005; Willis v. Long Island R. R. Co., 34 N. Y. 670; Graham v. Manhattan Ry. Co., 149 N. Y. 336, 43 N. E. Rep. 917; Watkins v. Birmingham Ry. & Elec. Co., 120 Ala. 147, 24 South. Rep. 392, S. C. 43 L. R. A. 297; McAfee v. Huidekoper, 9 D. C. App. Cas. 36, S. C. 34 L. R. A. 720, and note thereto.

We do not commit ourselves to or adopt all of the reasoning in these cited cases, nor is it necessary for us to do so in disposing of this assignment. The point now presented for determination is whether or not the declaration is sufficient to withstand the assault made upon it by the demurrer. It is alleged in the declaration that defendant's train was stopped by defendant at a regular station called Juliette, situated between Ocala, where plaintiff became a passenger on the train, and Dunnellon, her destination, and defendant's train waited at Juliette for a long time, to wit, about thirty minutes, for the arrival of another train on the defendant's railroad; that during this waiting interval the engine which was attached to and drawing the train on which plaintiff was a passenger was by defendant uncoupled and detached from the passenger cars on said train and moved, with other cars, to another track of defendant, leaving the car on which plaintiff was a passenger, and other cars carrying passengers, standing at the station, and "that while said passenger cars were standing still, and while the plaintiff was on the platform extending from and between said passenger cars and connecting the same, the defendant negligently and carelessly" did the things which occasioned the injury. No authorities have been called to our attention, and we have found none, which, in our opinion, would justify or warrant us in declaring that it. is apparent from the allegations of the declaration that the

injury "resulted from the carelessness and negligence of the plaintiff in voluntarily standing on the platform of the car at a place of danger apparent to any one of ordinary observation." To hold that merely being on the platform of a train which is not in motion, but standing still, is such negligence *per se* that as a matter of law it would preclude any recovery for injuries sustained by the person so being on the platform would be carrying the doctrine much further than it has been carried in any case we have been able to find. It seems to us that such a holding would be repugnant to common sense, as well as to the reason of the law. As was well said by Chief Justice GRAY in Barden v. Boston, Clinton & Fitchburg R. R. Co., 121 Mass. 426, text 428, "We can have no doubt that the contract between the parties, which required the corporation to furnish the plaintiff with a seat did not, as a matter of law, oblige him to keep it from the time he first took it until the train had come to a final stop at the place of his destination." Moore in his recent work on Carriers, 860, has the following: "The cause which may justify a passenger, without the imputation of fault on his part, as against the carrier, in leaving his seat and going outside the car, and occupying, temporarily or otherwise, a position there while in motion, must be dependent upon the occasion and circumstances which induce or impel him to do so; as, for example, where it becomes necessary for his comfort because of the crowded condition of the car to do so." Also see pages 866 *et seq.* Judge THOMPSON in Vol. 3 of his Commentaries on Negligence, section 2945, in discussing the leaving of his seat by a passenger, says: "It is not to be inferred from this that a passenger incurs the imputation of contributory negligence from quitting his seat in the coach under any

circumstances—as where he goes to the platform of the car when the train is at a halt at a regular station, to speak to a near relative; or to meet a friend and bring her into the car; and, while doing so, receives an injury from the sudden and violent starting of the train." Also see the two authorities cited by him in notes 189 and 190, McCurrie v. Southern Pac. Co., 122 Cal. 558, 55 Pac. Rep. 324, S. C. 5 Amer. Neg. Rep. 117, 12 Amer. & Eng. R. R. Cas. (N. S.) 170, and note on pages 173 *et seq.;* Southern R. R. Co. v. Smith, 95 Va. 187, 28 S. E. Rep. 173. These two cases are well in point and are instructive not only in dealing with this assignment but with some of the other assignments also, and we shall have occasion to refer to them again. We are clear that, under th allegations of the declaration in the instant case, on the assault made thereon by the demurrer, it cannot be held as a matter of law plaintiff is precluded from a recovery against defendant for the alleged injuries. Because the declaration alleges that plaintiff was on the platform while the passenger cars were standing still, during an interval of waiting for the arrival of another train, it is by no means implied therein, or inferable therefrom, that she had voluntarily selected such a position to stand or ride on when the train was ready to start in motion again. It is elementary that a demurrer admits the truth of all such matters of fact as are sufficiently pleaded. Barbee v. Jacksonville and Alligator Plank Road Co., 6 Fla. 262; 6 Ency. Pl. & Pr. 334. No error was committed in overruling the demurrer.

We pass now to the second assignment, which is based upon the overruling of defendant's motion "to strike out the declaration, or to require the plaintiff to amend the same," this motion being obviously based on section 1043

of the Revised Statutes of 1892. Before proceeding to dispose of this assignment, we call attention to the fact that plaintiff makes the same contention against its consideration that was made against the first assignment—in fact, discusses the first and second assignments together. This contention must fail for the same reasons we have already set forth in disposing of plaintiff's contention against the consideration of the first assignment. It can hardly be seriously contended by defendant that the declaration should have been stricken out. See Parkhurst v. Stone, 36 Fla. 456, 18 South. Rep. 594, and authorities there cited; Camp Bros. v. Hall, 39 Fla. 535, 22 South. Rep. 792; Craft v. Smith, 45 Fla. 222, 33 South. Rep. 996; 20 Ency. of Pl. & Pr., 988. As to compulsory amendment of pleadings, we held in Seaboard Air Line Railway Co. v. Scarborough, decided here at the last term, that the same rule was applicable thereto which prevailed in granting or denying applications for voluntary amendments under section 1042 of the Revised Statutes of 1892, and that the ruling of the trial court thereon would not be disturbed by this court, unless an abuse of judicial discretion was made to appear. Applying this principle to this assignment, we are clear that no error was committed in denying the motion, especially so as the trial court, in the order thereon, stated "that the plaintiff is limited in the trial of said cause to the several specific acts of negligence set forth and alleged in said declaration, and that the same are properly set forth in one count." That a plaintiff in an action seeking to recover damages or personal injuries caused by the negligence of another is confined to the allegations of the declaration, see L. & N. R. R. Co. v. Wade, 46 Fla. 197, 35 South. Rep. 863; Parrish v. P. & A. R. R. Co., 28 Fla. 251, 9 South.

Rep. 696. Also see L. & N. R. R. Co. v. Jones, 45 Fla. 407, 34 South. Rep. 246, and authorities therein cited; S., F. & W. Ry. Co. v. Tiedman & Bro., 39 Fla. 196, 22 South. Rep. 658. Vol. 6 of Thompson's Commentaries on Negligence, section 7452, and authorities cited in notes, may also prove instructive. If it be true, as defendant contends, that plaintiff was not so confined or limited at the trial in the introduction of her evidence, in accordance with such order, while such matters might form proper bases for other assignments, they are not available in support of the present assignment.

After the overruling of the demurrer and motion within the time fixed in the order, the defendant filed the following pleas: "Now comes the defendant in the above styled cause, and for pleas to the plaintiff's declaration filed herein says:

1. That it is not guilty as the said plaintiff has in her said declaration alleged and complained, and of this the said defendant puts itself upon the country.

2. And for a second and further plea this defendant says that the proximate cause of the personal injuries that may have been sustained by the said plaintiff was the reckless carelessness and negligence of the said Ethel Crosby, and of the mother of the said plaintiff, in whose care, custody and control the said plaintiff then and there was, in voluntarily, and without necessity, leaving the passenger coach on the defendant's train, where ample accommodations were afforded for the convenience and comfort of passengers, and, in violation of the rules of said defendant company, standing on the platform of the said passenger coach, at or near the end thereof, while the said train was in waiting for the regular connection at said station, Juliette, and at a time when the said train

so waiting, in the usual conduct and transaction of the business of the defendant at that point, was liable to be moved or started at any time. While the said plaintiff, and her mother, in whose care and custody the said Ethel Crosby then and there was, were negligently standing at or near the end of the said platform, as aforesaid, and without negligence on the part of defendant, and in the ordinary course of the business of the said defendant at that point, the said train was, without unnecessary or unusual violence, moved, and in taking up the slack between the coaches the foot of the said plaintiff was caught between the buffers, or between the ends of the platforms of the said connecting passenger coaches, and this the defendant is ready to verify.

3. And for a third and further plea this defendant says that each and every of the allegations in the said second plea are true as therein stated, and further says: That while said plaintiff was standing at or near the end of the platform of said passenger coach she, the said plaintiff, was then and there, recklessly and carelessly, and in the presence of her mother, who then and there had the care and custody of said plaintiff, engaged in playing on and between the platforms of the connecting passenger coaches, and while swinging her foot across the opening between said passenger coaches the said plaintiff negligently and carelessly permitted her foot to drop and remain between the said passenger coaches, and while the same was in that position, and without any knowledge on the part of the officers and agents in charge of said train of the dangerous position of the plaintiff, the said passenger coaches, being a part of said train as aforesaid, were moved and started from a standing position, and in taking up the slack between the said coaches the foot of

the said plaintiff, being then and there between the buffers, or between the platforms of said coaches, as aforesaid, was injured; and in manner and form aforesaid, and as a result of the negligence of said plaintiff and her mother, as aforesaid, whatever personal injuries the plaintiff may have sustained were thus received, and the negligence of said plaintiff, and of the mother of said plaintiff as aforesaid, were the sole and proximate cause of the injuries so received and sustained, and this the defendant is ready to verify."

The plaintiff interposed a demurrer to the second and third pleas, stating the substantial matters of law intended to be argued as follows:

"Ist. That said second plea does not state or set forth sufficient facts to constitute a defense good in law to the case stated in the declaration.

2nd. That said third plea does not state or set forth sufficient facts to constitute a defense good in law to the case stated in the declaration."

On the 29th day of April, 1905, the court made an order sustaining this demurrer, upon which the third and fourth assignments are predicated.

It is contended by defendant that these two pleas "sought to invoke the defense declared by section 2 of chapter 4071 of the Laws of 1891," which is as follows: "No person shall recover damages from a railroad company for injury to himself or his property where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover; but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him."

It is also urged that the object of these special pleas

was to be permitted to show, by testimony in support thereof, that the negligent acts averred in the pleas as having been "committed by the plaintiff, and her mother, were the sole and proximate cause of the injuries that may have been sustained by the plaintiff." The third plea interposed in the case of The Consumers Electric L. & St. Ry. Co. v. Pryor, 44 Fla. 354, text 358, 32 South. Rep. 797, text 798, was of similar import, being as follows: "That the injury complained of was caused entirely by the fault, negligence and carelessness of plaintiff, and by no carelessness, negligence or fault on the part of defendant." This plea, together with other pleas, was stricken out, on motion, and in disposing of the assign-. ment based thereon this court said, 44 Fla., text 386, 32 South. Rep., text 807, "We are of the opinion that the pleas, so far as they attempt to set up a defense to the action, amounted to the general issue, and were properly stricken out, on motion," citing Little v. Bradley, 43 Fla. 402, 31 South. Rep. 342. See 2 Chitty's Pleading (16 Amer. ed.) 670; Ellis v. L. & S. W. Ry. Co., 2 H. & N. 424. It is settled law in this court that a special plea tendering an issue covered by the plea of not guilty should be stricken out, either on motion of plaintiff or by the court of its own motion, under section 1043 of the Revised Statutes of 1892, as tending to embarrass the trial. See authorities cited in Little v. Bradley, supra, especially Barco v. Fennell, 24 Fla. 378. 5 South. Rep. 9; Wade v. Doyle, 17 Fla. 522. Also see Peacock v. Feaster, 51 Fla. 269, 40 South. Rep. 74. It is also true, however, as is held in the cited cases, that a special plea tendering an issue covered by the plea of not guilty is not for that reason demurrable. The defendant admits that "on demurrer being sustained, the defendant pleaded substantially the

same facts as constituting contributory negligence on the part of the plaintiff," and such pleas were permitted to stand, as we shall see further on in this opinion. This being true, we do not see how defendant was prejudiced in any way by such ruling, even though erroneous. See Little v. Bradley, *supra;* Parkhurst v. Stone, 36 Fla. 456, text 462, 18 South. Rep. 594, text 596; Consumers Elec. L. & St. R. R. Co. v. Pryor, 44 Fla. 354, text 386, 32 South. Rep. 797, text 806. This principle applies with especial force, for the reason that the court has the power, and it is its duty, to strike out special pleas tendering an issue covered by the plea of not guilty *sua sponte*. However, it may well be that the pleas in question were also open to attack by proper and sufficient grounds of demurrer, for the reasons that they were not sufficiently comprehensive or broad in their scope to constitute a full reply. to all the allegations in the declaration; that instead of traversing the material facts in the declaration they tended to raise a question of law whether or not upon the facts stated in the declaration, and which the pleas did not specifically deny, the defendant could be held liable, and for the further reason that they sought to have imputed to the plaintiff, an infant, the negligence of her mother. It is unnecessary, however, in view of the conclusion which we have reached, that the error, if any, was harmless, to consume further time in the discussion of this assignment.

On the 9th of May, 1905, by leave of the court. the defendant filed the following amended pleas:

"2. And for a second and further plea this defendant says, that the said Ethel Crosby, and her mother, in whose care the said Ethel Crosby then and there was, were guilty of contributory negligence in that they, voluntarily

and without necessity, left the passenger coach on defendant's train, where ample accommodations were afforded for the convenience and comfort of passengers, and stood upon the platform of said passenger coach, the said Ethel Crosby standing at or near the end thereof, while said train was in waiting at said station, Juliette, and at a time when said train was liable to be moved or started in the usual conduct and transaction of the business of the defendant at that point. While the said plaintiff was in charge of her mother as aforesaid, the detached engine was again coupled to said train, in the ordinary course of the business of said defendant at that point, and in taking up the slack between the coaches the foot of said plaintiff was caught between the buffers, or between the ends of the platforms, of the connecting coaches. Defendant says if the alleged injuries were not wholly caused by the negligence of the said Ethel Crosby, and her mother as aforesaid, that the said negligence contributed to whatever injuries that may have been sustained by the said Ethel Crosby, and this defendant is ready to verify.

3rd. And for a third and further plea this defendant says that the said Ethel Crosby, and her mother, in whose care the said Ethel Crosby then and there was, were guilty of contributory negligence in that they, voluntarily and without necessity, left the passenger coach on defendant's train, where ample accommodations were afforded for the convenience and comfort of passengers, and went out upon the platform of the said passenger coach, and while the said mother was standing on said platform the said Ethel Crosby, in the presence of her mother, then and there engaged in playing on and between the platforms of the connecting passenger coaches, and while swinging on the iron railings bordering the platforms of

said coaches, negligently and carelessly permitted her foot to drop and remain down and between the ends of said coaches, and while the foot of said Ethel Crosby was in that position the said passenger coaches, being a part of the said train as aforesaid, were slightly moved and started from a standing position, and in taking up the slack between the said coaches the foot of the said plaintiff, being then and there between the buffers, or between the platforms of said coaches as aforesaid, was injured. At the time when the said Ethel Crosby was thus playing on and between the platforms of said coaches as aforesaid the train was liable to be moved or started in the usual conduct and transactions of the business of the defendant, and this defendant says if the alleged injuries were not wholly caused by the negligence of said Ethel Crosby, and her mother as aforesaid, the said negligence contributed to whatever injuries that may have been sustained by the said Ethel Crosby, and this the defendant is ready to verify."

The plaintiff interposed a demurrer to these pleas, but it was overruled, so even if error was committed in such ruling the defendant cannot raise the question. Issue was joined by plaintiff on the first plea of not guilty and the second and third pleas as amended, and the trial was had upon the issue so made up.

The fifth and sixth assignments are as follows:

"5th. The court erred in sustaining the plaintiff's objections to the question propounded by the defendant to Mrs. Crosby, a witness for the plaintiff, on cross-examination, said question being as follows: 'Now, Mrs. Crosby, when you took passage with yourself and daughter on the train did you buy two tickets or one?'

"6th. The court erred in sustaining the plaintiff's objec-

tion to the following question propounded to said witness, Mrs. Crosby, on cross-examination, and in refusing to permit the said witness to answer said question: 'Did your daughter Ethel have a ticket as a passenger from Ocala to Dunnellon on the occasion referred to?' "

We find from the bill of exceptions that Mrs. Ida Crosby, who was the first witness introduced on behalf of the plaintiff, had testified on direct examination that she and her daughter, Ethel Crosby, the plaintiff, were passengers on the train of defendant from Ocala to Dunnellon on the 19th day of September, 1902, the date of the injury to plaintiff. The two questions recited above in the fifth and sixth assignments were propounded to the witness by the defendant on cross-examination, to each of which the plaintiff objected on the ground "that there is no issue in the case as to the status of the plaintiff here as a passenger," which objections were sustained to each question.

In an action of trespass on the case, "under a plea of the general issue the plaintiff was compelled at common law to prove the whole of the allegations in his declaration, and the defendant was left at liberty to avail himself of any matter of defense at the trial which would, according to the circumstances of the case, bar the plaintiff's recovery, without apprising the plaintiff by his plea of the circumstances on which it was founded, because the action is based on the mere justice and conscience of the plaintiff's case, and is in the nature of a bill in equity." 21 Ency. of Pl. & Pr. 921, and authorities cited in notes, especially Hall v. Snowhill, 14 N. J. L. 551, text 561; Jones v. Buzzard, 2 Ark. 415, text 442; How v. Ches. and Del. Canal Co., 5 Harr. (Del.) 245, text 247. Also see Black's Law and Practice in Accident

Cases, Sec. 164; Gould's Pleading (5th ed. by Heard) 303; Abbott's Trial Brief, Mode of Proving Facts (2nd ed.) 524. The common law requirement was changed by the pleading rules of Trinity Term, 1853, which rules have the force of an act of parliament. See 1 Chitty's Pl. (16 Amer. ed.) 518; Day's Common Law Procedure Acts (4th ed.) 490, 496, 1 Saunders' Pl. & Ev. 765. Rule 71 of Rules of Circuit Court in Common Law Actions, which rules were adopted by this court and became effective on the first day of June, 1873, and are prefixed to 14 Fla., is an exact copy of the Trinity Term rule on that subject, including all of the examples given, is as follows: "In action for *torts*, the plea of not guilty shall operate as a denial only of the breach of duty or wrongful act alleged to have been committed by defendant, and not of the facts stated in the inducement, and no other defense than such denial shall be admissible under that plea; all other pleas in denial shall take issue on some particular matter of fact alleged in the declaration.

*Exempli gratia*: In an action for a nuisance to the occupation of a house by carrying on an offensive trade, the plea of not guilty will operate as a denial only that the defendant carried on the alleged trade in such a way as to be a nuisance to the occupation of the house, and will not operate as a denial of the plaintiff's occupation of the house.

In an action for obstructing a right of way, such plea will operate as a denial of the obstruction only, and not of the plaintiff's right of way.

In an action for slander of the plaintiff in his office, profession or trade, the plea of not guilty will operate in denial of speaking the words, of speaking them

28—S C

maliciously, and in the defamatory sense imputed, and with reference to the plaintiff's office, profession or trade, but it will not operate as a denial of the fact of the plaintiff's holding the office or being of the profession or trade alleged.

In actions for an escape, it will operate as a denial of the neglect or fault of the sheriff, or his officers, but not of the debt, judgment, or preliminary proceedings.

In actions against a carrier, the plea of not guilty will operate as a denial of the loss or damage, but not of the receipt of the goods by the defendant as a carrier for hire, or of the purpose for which they were received."

That the adoption of this rule effected a material change in the principles of the common law upon that point, see Plowman v. Foster, 6 Cold. (Tenn.) 52 text 55. Defendant contends that the status of the plaintiff as a passenger was a material allegation in the declaration which was put in issue by the plea of not guilty, and it was therefore incumbent upon the plaintiff to prove it. Undoubtedly if this contention is correct, reversible error was committed in sustaining the objections to the two questions, as they were strictly in cross of what had been brought out on the direct examination of the witness. The point presented for determination, then, is, Is this contention well founded? We find that the last example given, both under Rule 71 and the English Rule, is as follows: "In actions against a carrier, the plea of not guilty will operate as a denial of the loss or damage, but not of the receipt of the goods by the defendant as a carrier for hire, or of the purpose for which they were received." It seems to us, by analogical reasoning, though we recognize the principle that an analogy is rarely or

never complete and is not a demonstration, that if this principle is applicable in an action against a carrier for the loss of goods it would apply with like force in an action brought by a passenger against a carrier for personal injuries. We do not see wherein the distinction lies. Defendant admits that the purchase of a ticket or the payment of fare is not essential to the status of one as a passenger on a railroad train. Florida Southern Ry. Co. v. Hirst, 30 Fla. 1, 11 South. Rep. 506, S. C. 32 Amer. St. Rep. 17, 16 L. R. A. 631. There is a clear distinction between actions brought by a passenger *ex contractu* and *ex delicto*, as to which see 15 Ency. of Pl. & Pr. 1124, 1125, and authorities cited in notes. As there stated: "When the action is in *tort*, the allegation of the contract of carriage is a mere inducement to the action to show the defendant's right to sue as a passenger." We are strengthened in our conviction as to the correctness of our conclusion by reason of the fact that at the same time Rule 71 was adopted Rule 72 was also adopted, which is as follows: "All matters in confession and avoidance shall be pleaded specially, as in actions on contract." See Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516. If, then, the allegation in the declaration that plaintiff was a passenger is simply one of the facts stated in the inducement, such fact was not put in issue by the plea of not guilty, but would require a special plea to that effect. See Somerset & C. R. R. Co. v. Galbraith, 109 Pa. St. 32, 1 Atl. Rep. 371. It is settled law in this court that all the allegations in the declaration which are not denied by plea are admitted to be true. Supreme Lodge Knights of Pythias v. Lipscomb, 50 Fla. 406, 39 South. Rep. 637, and authorities there cited. Also see Judge v. Moore, 9 Fla. 269, text 276. It

necessarily follows from what we have said that these errors are not well assigned.

The seventh assignment is abandoned.

The eighth assignment is passed by defendant and discussed together with the fifteenth, sixteenth and seventeenth assignments, and we shall treat it likewise.

The next assignment in order is the ninth, which is as follows: "The court erred in permitting witness for the plaintiff, W. L. Lowry, on direct examination, to testify and express his opinion, over the objection of the defendant, as to whether the accident would have occurred if the appliance, or buffer iron, or buffer plate, had been on the coaches, and if the same had been a proper buffer iron, or plate."

This witness had already testified that he was in charge of the train of defendant as conductor on the day the plaintiff was injured, and had been in the service of the defendant at that time for about a year; that in 1877, before he had ever had any employment with defendant, he had had experience as brakeman and conductor, and his service had made him familiar with the general equipment of passenger trains. He had also testified to the effect that in 1902 a railroad ordinarily well equipped used appliances at the point where passenger cars came together or connect, or plates or buffer irons at such points, for the purpose of safety, and that during such year defendant used two kinds of plates or irons, one kind flat and one round, such two kinds of plates or irons being in common use at that time on railroads that were ordinarily well equipped; also that he did not see the accident to plaintiff, and did not remember to have noticed the kind of buffer plates or irons used on the train that day or what their condition was. The follow-

ing proceedings were then had during the further examination of this witness by plaintiff: " 'Mr. Lowry, if you did not see the accident, and if you do not remember the kind of plate or buffer iron that the car had at that time, I ask you, as a practical railroad man, whether Ethel Crosby was standing on the platform with her back to her mother, and with her arms wrapped around her mother from the rear, and if her mother was standing on the car platform with her back towards Ethel, Mrs. Crosby's face being towards the railroad station, and she holding to the rail on each side, and while in that position, if such jar or shock occurred that Ethel's foot was caught between the cars and mashed, and Ethel fell over and caught with her hands on the rail, and if the accident occurred under those circumstances, whether, in your opinion, if the appliance, or buffer iron, or buffer plate, had been there, and had been a proper iron or plate, the injury could have happened?'

But to the admission of the question as propounded the defendant did then and there object on the ground that:

1. There has been no issue on the part of the plaintiff that the buffers or appliances as used by the railroad company on that occasion were not such buffers and appliances as were in general use by well regulated railroad companies at the time of the accident.

2. Because it is wholly irrelevant and immaterial as to what may have been the construction of the buffers or appliances in this case.

3. Because the duty of the railroad company to its passengers in all cases of this character is not to be measured or determined by the character of the engine, buffers, buffer plates or other appliances, which were remote, and

had no connection whatever with the duty of the defendant to any passenger upon its train.

4. Because the witness had not qualified himself to testify as to what is or is not a proper buffer or plate.

But the said judge did then and there overrule said objection, and permitted said question to be answered, which answer was as follows:

Ans. 'No, I do not. They used two different kinds, the platform continuous platform, if they are both equipped, if both coaches were equipped with the same platform, the continuous platform, there is no space to drop a pencil down, or anything of that kind, but there are two different kinds, there is one with a round plate, or of some kind which comes against this flat one, but if they are continuous it is just like this table; you could walk over it just like over this table, when you use coaches with continuous platforms, but when a coach is used with those rings on those plates it leaves a gap between the two coaches into which I could drop my foot, or a pencil, or anything like that, between the two coaches.'

The said plaintiff, further to maintain the issues on her behalf, propounded to said witness, Lowry, the following question: 'If both of these cars had been equipped at the time of the accident with an appliance like the one in the model of the rear car, could this accident have happened in the way that has already been stated to you that it happened in your direct examination?' But to the admission of said question as propounded the defendant then and there objected on the following grounds: '

1. It is wholly irrelevant and immaterial.

2. It calls for the expression of opinion of the witness as to how an accident may have happened or not happened.

3. Because the answer of the witness, either affirmatively or negatively, would have no bearing on the question of alleged negligence of the railroad company.

But the said judge did then and there overrule said objections, and permitted the said question to be answered, which answer was as follows: 'It could not.'

To which ruling the defendant then and there excepted.

The overruling of the defendant's objections to these two questions forms the basis for this assignment. Defendant earnestly contends that the witness had not qualified to testify as an expert, and therefore error was committed in overruling the objections to the question. This court has held that "it is the province of the trial court to determine whether or not a witness offered as an expert has such qualifications and special knowledge as to warrant his testifying as an expert, and the decision of such trial court is conclusive upon this point, unless it appears from the transcript to have been erroneous or to have been founded upon some error in law." Schley v. State, 48 Fla. 53, 37 South. Rep. 518; Davis v. State, 44 Fla. 32, 32 South. Rep. 832. It may be doubtful as to whether or not this testimony, strictly speaking, could properly be termed expert testimony. Does it not rather fall within what has been designated as the testimony of skilled witnesses? See 17 Cyc. 64, 208, and notes. If this question be answered in the affirmative, then it must be held that the witness had sufficiently qualified himself as to possessing the requisite skill and experience as a railroad man to render said question proper. Along this line the case of Baltimore & Potomac R. R. Co. v. Elliott, 9 D. C. App. Cas. 341, will prove instructive. Viewed from either point, the evidence was admissible, within the discretion of the trial judge, against this

ground of objection, and no abuse of this discretion has been made to appear to us. As to the other grounds of objection, which are general in their nature, see Thomas v. Williamson, 51 Fla. 332, 40 South Rep. 831; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656, and authorities there cited.

This assignment has not been sustained.

The tenth assignment is that "the court erred in permitting witness, Henry Raysor, over the objections of the defendant, to testify, in response to questions by plaintiff's attorney, as to the habit of Ballard, the engineer, of making couplings on other occasions than the one in question." This witness had first been called on behalf of the plaintiff, and later was re-called on behalf of defendant. He had already testified that he was in the service of the defendant as baggage master at the time of the injury to plaintiff, and had given the signals to the engineer as to the approach of the engine when it came back to be attached to the train, upon the occasion of the injury. He had further testified that he had examined the coupling between the cars when they were in motion, after the accident, south of Juliette, and found it then in a weakened condition, too much space between the buffers and drawheads, and the drawheads had too much slack in them. When recalled on behalf of the defendant, he had testified on his direct examination that he did not consider that the engine backed up or made the couplings on the occasion in question in any violent manner, and had further testified as follows: "I do not recollect any violence whatever. My recollection is that the bell was ringing. There was nothing at that time that attracted my attention as to the coupling being violent. It would have had to be a very unusually violent

coupling for me to have noticed it, whenever made by the man they had on that engine that day, because it is his custom to jam and ram things around as much as possible; he is a man of a very high temper, and he is always mad; and one of the roughest men I ever worked behind; and he would have had to have been very unusually rough for me to have noticed it.

Q. Mr. Raysor, I asked you the question to state whether or not you were able to testify to this jury as to whether or not that coupling was violent or otherwise on that occasion. Have you not already made a statement that it was moderate?

Ans. I said my recollection of it—it was moderate. I do not mean to go ahead and say that it was not moderate.

The name of the engineer was Ballard. He is now dead. On this occasion the coupling was moderate and the bell was ringing; that is my recollection of it. My recollection is that the coupling on this occasion was very moderate."

On cross-examination he was asked the following question by plaintiff:

Mr. Raysor, you spoke of Mr. Ballard, the engineer. State whether or not Mr. Ballard was in the habit of making couplings with unusual force or violence in shifting trains?"

This question was objected to by defendant on the following grounds:

"1 That it is irrelevant and immaterial.

2. The question should be confined to what was the case on this particular occasion.

3. The witness has already testified that on this particular occasion the couplings were not made with un-

usual force or violence, but were made moderately and easily.

But said judge did then and there overrule said objections and admitted said evidence, and permitted said question to be answered, which answer was as follows:

'Well, he was.'

Thereupon the defendant moved the court to strike out all the testimony of said witness, Raysor, as to the habit of the engineer, Ballard, of making couplings with unusual force or violence on occasions other than that on the day in question, upon the grounds as above stated.

But the said judge did then and there overrule said motion and permitted said testimony to stand, to which ruling the defendant did then and there except."

We are of the opinion that this assignment is without merit. The witness had already testified on his direct examination by defendant as to the habit and custom of the engineer in making couplings, as we have seen, and the question was entirely proper on cross-examination. J. T. & K. W. Ry. Co. v. Wellman, 26 Fla. 344, text 347, 7 South. Rep. 845, text 846, is in point. We fail to see wherein the defendant was harmed in any way by the admission of this testimony.

The eleventh assignment is that "the court erred in sustaining the plaintiff's objection to the question propounded to the witness, Lowry, by the defendant, as follows: 'Mr. Lowry, as you approached the train did you hear Mrs. Crosby make any declaration as to how the accident occurred?' " This witness had already testified on behalf of plaintiff, and later was called to the witness stand by defendant. On his direct examination he had testified that he did not witness the accident, and that it was probably from thirty to sixty seconds after it

occurred before he saw what had happened, when he then went to where plaintiff was and took her in his arms. He was then asked the question set forth in the above assignment, which was objected to by plaintiff on the following grounds, and the following proceedings had:

"1. Any declaration made by Mrs. Crosby is not admissible.

2. No foundation or predicate has been laid for the asking of this witness questions in regard to what Mrs. Crosby said.

3. The testimony, if tending to prove anything, will tend to impute to the plaintiff in this cause some possible negligence on the part of Mrs. Crosby.

4. The testimony sought is clearly hearsay, as being a statement made by Mrs. Crosby in relation to the accident.

5. The question relates to a time subsequent to the happening of the accident, and does not relate to anything which occurred before or at the time of the accident.

In the discussion of the objections the jury was permitted to retire, and the counsel for the defendant stated that the evidence was offered as part of the *res gestae,* and that the defendant proposed to prove by the witness that within a few seconds after the accident happened, and while the child was still on the platform in the presence of her mother, Mrs. Crosby voluntarily explained and stated, in the hearing of the witness, that the accident was all her own fault.

But the said judge did then and there sustain said objection, and refused to permit the said question to be answered; the court stating as follows:

'The court is of opinion that to admit declarations of

Mrs. Crosby would be to admit hearsay evidence and declaration as to third parties.

2. Mrs. Crosby having testified as a witness in this case for the plaintiff, and the testimony now sought to be proved as to her declaration and statements were noft called to her attention, the court is of the opinion that it cannot be introduced because of this fact, and therefore sustains 'the said objections.' "

Strictly speaking, this question was a preliminary one, and was not improper in itself, and for that reason was not objectionable. Ortiz v. State, 30 Fla. 256, 11 South. Rep. 611; Dickens v. State, 50 Fla. 17, 38 South. Rep. 909. However, no such point is made before us. Both parties have treated it as though the question called for the declaration made by Mrs. Crosby, and the trial judge so understood it. We are of the opinion that this declaration made by Mrs. Crosby at the moment of the accident formed part of the *res gestae*, and should have been admitted as a fact or circumstance for the consideration of the jury. It is true that Mrs. Crosby was not the person injured, and that she is not the plaintiff in this action, but her daughter. It is also true that we have held "that in an action by the child for damages for an injury, the negligence of the parent cannot be imputed to the child so as to prevent a recovery." Jacksonville Electric Co. v. Adams, 50 Fla. 429, text 437, 39 South. Rep. 183, text 185. An examination of this cited case and the authorities referred to therein discloses, however, that a railroad company does not owe the same degree of care to a child of tender years on its train in the charge of or accompanied by its mother or other adult that would be due from it to such child unaccompanied or not in the care of an adult. We deem it unnecessary to repeat what we

said in the cited case, as the decision is of recent date, but content ourselves with referring to the discussion therein. In view of the issues in the case, the presumption of negligence cast upon a railroad company by chapter 4071 of the Laws of 1891, and the conflicting testimony as to the relative positions of the plaintiff and her mother on defendant's train at the time the injury was inflicted, this declaration of Mrs. Crosby was admissible. We do not wish to be understood as intimating or holding that proof of such a declaration would destroy plaintiff's right of action or would prevent a recoverey against defendant. This would be in conflict with the principle enunciated by us in Jacksonville Electric Co. v. Adams, *supra*. All that we intend to determine now is that such declaration is admissable as a part of the *res gestae,* just like any other fact or circumstance forming a part thereof. See DeMahy v. Morgan Louisiana & T. R. & S. Co., *supra,* cited by defendant in support of the first assignment; 24 Am. & Eng. Ency. of Law (2nd ed.) 684, and authorities cited in notes; Abbott's Trial Brief, Civil Jury Trials (2d ed.) 348; Twomley v. Central Park, N. & E. River R. Co., 69 N.Y. 158, S. C. 25 Am. Rep.162; Norwich Transportation Co. v. Flint, 13 Wall (U. S.) 3. Lambright v. State, 34 Fla. 564, text 580 *et seq.,* 16 South. Rep. 582, text 586 *et seq.,* and authorities cited therein, will prove instructive.

The twelfth assignment is based upon the refusal of the trial court to permit the witness, Lowry, to answer the following question propounded by defendant: "Please state the contents or wording on the sign then on the coaches which you say you have invariably observed in your experience as a conductor on that line."

To this question the plaintiff objected on the following grounds:

First, it is not the best evidence.

Second, if there was any printed matter or lettering on the car it is incompetent for this witness to state what the contents of such printed matter is.

The witness had already testified as follows: "I cannot say whether there was any admonishment on the car with reference to passengers standing upon the platform. I do not think I ever saw a coach in service that did not have a sign on it; but whether they all have got them, or whether that did have one on it at that time I do not know. I do not remember ever handling a coach in the service that did not have such a sign on it. I could not tell what the sign was made of, whether it was an iron plate, or printed on the door, or what; it has been a number of years."

Having so testified, we fail to see wherein defendant was harmed by the refusal of the court to permit him to answer the question upon which this assignment is based. He had already said he did not know whether or not all the coaches had signs, or whether or not the one in question had. It does not appear that any information could have been elicited from him in response to the question, so we see no necessity for discussing the matter further than to say we find no reversible error in the ruling.

The thirteenth assignment is that "the court erred in sustaining plaintiff's objection to the introduction in evidence of rule 802, as shown on page 72 of book of rules of the defendant company, dated May 1st, 1903."

H. A. Ford, a witness on behalf of defendant, had testified that he was the district superintendent of the defendant for the Gainesville district, in which district

was embraced the Homosassa branch, and had been handed a certain book by defendant, concerning which he had testified as follows: "This is a rule book of the company; and if rule 802 as set forth in this book was not in force, there was something very similar to that rule. That rule was not printed until after that time; but every well regulated road has a rule of that kind; and we undoubtedly did prior to that time. This book is dated May the 1st, 1903, and that is why I qualify my answer. The wording might not have been exactly the same in the previous book, but the meaning would be the same. That is one of the rules that has been in effect ever since I can remember."

The following proceedings were then had: "The said defendant, further to maintain the issues on its behalf, then and there offered in evidence a book of rules dated May 1st, 1903, for the special purpose of having read in evidence rule 802, as shown by page 72 of said book of rules, relating to the duty of conductors, which rule 802 is as follows: 'They will see that passengers are properly seated and not allow them to stand on the platform of cars, nor, unless for want of room elsewhere, ride in the baggage, express or mail cars, nor violate any other rule of the company.'

But to the admission of said testimony, the said rule book and rule 802 above quoted, the plaintiff did then and there object on the grounds that:

1. It appears from the book which is offered in evidence that the same was printed and promulgated May 1st, 1903, subsequent to the occurrence of the injury.

2. It further appears that the rules contained therein should take effect May 1st, 1903, and supersede all pre-

vious rules or instructions of the company inconsistent therewith.

3. It appears that the book offered in evidence is not designed or intended to be circulated among the public, or to advise the public as to the rules or regulations contained in the book, but that the specific purpose and intention of the book are to advise and control employees of the company.

4. There is no evidence in the record which shows that the plaintiff had any knowledge of the existence of any rules or regulations, or if she had such knowledge, that the same would be binding or obligatory upon her.

5. That the rules mentioned by counsel for the defendant appears by said book to be a rule specially directed and designed to control passenger conductors, and to have no relation to the public for advising or directing or guiding the public, or notify the public in any way, as to the transportation services of the company.

6. If the book should be admitted at all, the entire book, and not a single paragraph or clause of it, can be admitted as evidence.

But the said judge did then and there sustain said objections, and refused to admit said book, or the rules above quoted, in evidence.

To which ruling the defendant then and there excepted.

Defendant cites Florida Southern Ry. Co. v. Hirst, 30 Fla. 1, 11 South. Rep. 506, S. C. 32 Amer. St. Rep. 17, 16 L. R. A. 631; South Fla. Ry. Co. v. Rhodes, 25 Fla. 40, 5 South. Rep. 633, S. C. 23 Amer. St. Rep. 506, 3 L. R. A. 733, in support of its contention. We have carefully examined these two cases, as well as some of the authorities cited therein, and are of the opinion that they fail to sustain the contention, the facts and circumstances in the

instant case being quite unlike those in the cited cases. No error was committed in this ruling.

We pass now to the consideration of the fourteenth assignment. Defendant's witness, H. A. Ford, had testified on his direct examination that he had had twenty-five years' experience in the railroad service, by reason of which he was able to state the kind of couplers or buffers in general use; that two couplers or buffers, known respectively as the Janney Disk and the Janney Buhoup, were in general use by well regulated railroad companies in September, 1902, and that these two couplers were used indiscriminately on the trains; in other words, a car having the Janney Disk coupler and a car having the Janney Buhoup coupler were attached to each other indiscriminately, as was the case of the two cars or coaches in question upon which the accident occurred. He was asked by plaintiff on cross-examination the following question, and to which the following objections were interposed by defendant:

" 'Is it not a fact, Mr. Ford, that in September, 1902, the equipment used by the Atlantic Coast Line Railroad Company on its line between Ocala and Homosassa consisted of cars and engines, including the fittings and appliances and couplers of cars, and all parts of same, which were older, inferior, less comfortable, less convenient than those used by the same road at that time on its main line?"

But to the admission of said question propounded the defendant did then and there object on the grounds that:

1. It is wholly irrelevant and immaterial.

2. It is not justified by the issues raised by the pleadings.

3. Because the only complaint in the pleadings which relate to equipment at all is an allegation referring to buffer plates.

4. Because inquiry as to equipment must necessarily be confined to the equipment of these particular cars on that particular date at the time the accident occurred, and to the particular objection made in the pleadings relating to acts of negligence alleged.

5. It is not in response to the direct examination, and not a proper cross."

These objections were overruled, and this ruling forms the basis for this assignment. The reply of the witness to this question was as follows: "It is not a fact that in September, 1902, the equipment used by the Atlantic Coast Line Railroad Company on its line between Ocala and Homosassa, consisting of cars and engines, including fittings and appliances and couplers of cars, and all other parts of same, which were older, inferior, less comfortable, less convenient, than those used by the same road at the time on its main line. It was exactly the same equipment as we used between Jacksonville, Florida, and Richmond; but the Pullman equipment between Jacksonville, Florida, and Richmond, of course, was not the same; but the rest was. Outside of the vestibule equipments; these coaches were exactly like coaches used anywhere on the Atlantic Coast Line of the Plant System pattern.

Yes, I mean to say that the Atlantic Coast Line Railroad Company ordinarily or usually had equipment, especially passenger coaches, on its line between Ocala and Homosassa which were in all respects equal to the passenger coaches usually employed by the same line at that time on its line between Jacksonville, Florida, and Richmond, Virginia, outside of the vestibule equipment."

In view of the reply made by the witness, even though the grounds of objection to the question were well founded, we might hold that defendant was not harmed in any way by the ruling but for what followed in the examination of other witnesses introduced by plaintiff. Having elicited this reply on the cross-examination of the witness, H. A. Ford, which plaintiff found unsatisfactory, other witnesses were called by her to contradict this statement of Mr. Ford, as we shall see a little later on. It is well settled in this court that a witness cannot be cross-examined as to any fact which is collateral or irrelevant to the issue merely for the purpose of contradicting him by other evidence if he should deny it, thereby to discredit his testimony. Fields v. State, 46 Fla. 84, 35 South. Rep. 185, and authorities therein cited. It is also well settled here, as we saw in considering the second assignment, that the evidence adduced in an action should be confined to the issues. We shall also have occasion to look further into this matter later on. We are of the opinion that the grounds of objection to the question were well founded and that they should have been sustained.

We now come to the fifteenth, sixteenth and seventeenth assignments, which defendant argues together, in connection with the eighth assignment. All of these assignments are based upon the overruling of the defendant's objections to certain questions propounded by plaintiff to witnesses, W. W. Stripling, R. J. Knight and W. L. Lowry, called in behalf of plaintiff in rebuttal. All of the questions so objected to sought to elicit from the witnesses named information as to the comparative general equipment of the passenger cars of defendant between Jacksonville and Savannah and other points on the main

line with the general equipment on that portion of the line from Ocala to Homosassa, known as the Homosassa branch, on which the accident in question occurred. Practically the same objections were interposed to all the questions to the several witnesses upon which these assignments are predicated. As an example, we take the following question to the witness, W. W. Stripling: "At that time (referring to the year 1902) how did the equipment of the passenger trains of the Atlantic Coast Line Road which was used on the Homosassa branch compare, as to their being new, and as efficient, and as modern, and as up to date, as the coaches that were used on passenger trains between Jacksonville and Savannah?" This question was objected to on the following grounds:

"1. If admissible at all, the same should not be offered in rebuttal, but in chief.

2. Because the testimony sought to be elicited does not relate to the particular acts or acts of alleged negligence in the declaration of this cause.

3. Because testimony of this character can only have the effect of prejudicing the minds of the jury when the witness, in accordance with the question propounded, has not shown that he had any acquaintance whatever with the couplings, buffers or buffer plates between the coaches on the date of the accident.

4. If the testimony is offered by way of contradicting testimony of any other witness who may have heretofore testified in said cause, it is not competent for the plaintiff on cross-examination of a former witness to lay the foundation of testimony of this immaterial character, claiming that the same is in rebuttal.

5. The plaintiff is not permitted to prove an immaterial inquiry on cross-examination of defendant's witnesses,

with the view of introducing other witnesses in contradiction thereof.

6. Because the inquiry in this case should be limited to the acts of negligence alleged in the declaration, and to the facts and circumstances as they existed on the date of the alleged injury, and to the facts and circumstances relied upon by the plaintiff in the pleadings as constituting negligence."

If the testimony was admissible at all, the fact that it was offered and received in rebuttal instead of during the examination in chief would not constitute reversible error. It is settled law here that the trial court is authorized to regulate the order of the introduction of evidence, and its discretion in this matter will only be interfered with by an appellate court where clearly abused, and, after either or both parties have rested, the admission or exclusion of further evidence is in the discretion of the trial judge. See Wilson v. Johnson, 51 Fla. 375, 41 South. Rep. 395; Hoodless v. Jernigan, 51 Fla. 211, 41 South. Rep. 194; Pittman v. State, 51 Fla. 94, 41 South. Rep. 385; Seaboard Air Line Railway v. Scarborough, decided here at the last term; Thomas v. State, 47 Fla. 99, 36 South. Rep. 161; Volusia County Bank v. Bigelow, 45 Fla. 638, 33 South. Rep. 704; Coker v. Hayes, 16 Fla. 368; Burroughs v. State, 17 Fla. 643; Brown v. State, 40 Fla. 459, 25 South Rep. 63; Roberson v. State, 40 Fla. 509, 24 South. Rep. 474; McCoggle v. State, 41 Fla. 525, 26 South. Rep. 734; Davis v. State, 44 Fla. 32, 32 South. Rep. 822; Robinson v. State, 50 Fla. 115, 39 South. Rep. 465.

Was the testimony admissible at all? In disposing of the fourteenth assignment we have seen that a foundation for testimony which is collateral or irrelevant to the issue

cannot be laid by the cross-examination of a witness as to such matters. Yet this is the only foundation laid, as defendant had introduced no testimony as to such matters. No principle of evidence is better settled than that no evidence is admissible which does not correspond with the allegations in the pleadings and tend to prove the issues. In other words, both in an action at law and a suit in equity the *allegata* and *probata* must reciprocally meet and correspond. See the discussion and authorities cited in this opinion under the second and fourteenth assignments. We would also refer to Pinney v. Pinney, 46 Fla. 559, 35 South. Rep. 95, and authorities there cited; Jenkins v. State, 35 Fla. 737, 18 South. Rep. 182, S. C. 48 Amer. St. Rep. 267. It is true, as contended by defendant, that the evidence in the case should be confined to the acts of negligence alleged in the declaration. We fail to see the relevancy or materiality of the comparative equipment and kind of cars used and operated by defendant on its main lines and the Homosassa branch. Even if it be true, as the witnesses, Stripling, Knight and Lowry, testified, in response to the questions objected to, that the cars used by defendant on its Homosassa branch were older, rustier and inferior to those used on the main lines, we do not see how that fact could have contributed in any way to the injury inflicted upon plaintiff. The tendency of this testimony was to confuse, mislead and prejudice the jury. The objections to the questions should have been sustained, and the errors are well assigned. See Louisville & Nashville R. R. Co. v. Collingsworth, 45 Fla. 403, 33 South. Rep. 513; Simmons v. Spratt, 26 Fla. 449, 8 South. Rep. 128, S. C. 9 L. R. A. 343.

The eighteenth and nineteenth assignments are based respectively upon the sustaining of plaintiff's objections

to the second and third direct interrogatories propounded by defendant to W. B. Denham, a witness in its behalf. These interrogatories and the objections interposed thereto were as follows:

" 'The plaintiff in this case, Ethel Crosby, alleged to be an infant ten years of age, by J. W. Crosby, as next friend, sues the Atlantic Coast Line Railroad Company for an injury alleged to have been sustained by the said Ethel Crosby on or about the 19th day of September, 1902; the said plaintiff in her declaration alleging, among other things, that while the train on which she was a passenger from Ocala to Dunnellon, in Marion county, Florida, was resting and stopping at an intermediate station known as Juliette for the arrival of another train on defendant's line of railroad, the locomotive engine was detached from the train upon which the plaintiff was riding as a passenger and moved to another railway track, while the train of cars carrying the passengers was left standing at said station of Juliette; and that while the said train of passenger cars, with the engine detached, was left standing at said station of Juliette the plaintiff went out on the platform extending from and between the passenger cars constituting said train, and connecting same, and that while plaintiff was so standing the defendant negligently and carelessly caused said locomotive engine to be run backward with great force and violence against said passenger cars so standing on said track, and that the same was done without giving any signal, notice or warning of the approach of said engine, and that the said railroad company did not provide and use on and between said passenger cars a certain appliance known as buffer iron, which said appliance is described in said declaration as a metal plate covering the space or

opening between the ends or buffers of cars used for passengers; and the said declaration further alleges that said appliance was necessary for the safety and security of passengers on railway trains occupying the platform of cars, and in getting on and off said cars, and said buffer plates were then generally and commonly used by common carriers and railway companies as a means of protection and safety for passengers and employees on railroad trains.

The declaration further alleges that by reason of the violent shock made by the engine in coming in contact with said train of cars, without notice or warning, and by reason of the failure of the railroad company to provide buffer plates closing the space between the passenger coaches, that the plaintiff, who was standing on said platform, was thrown between said coaches, her foot being crushed between the buffers thereof.

Now, please state whether or not buffer plates were in general use in the operation of local trains by well regulated railroad companies on or about said date of September 19th, 1902, and immediately prior and subsequent thereto?'

The objection being upon the following grounds:

1. That it unnecessarily and improperly recites the entire declaration in the case.

2. That it relates to matters not within the issue.

3. That it restricts the inquiry to the class of local trains operated by well regulated railroad companies, about which there is no issue.

And the said judge did then and there sustain the third of said objections, and would not permit the said interrogatory, nor the answer thereto, to be read in evidence.

The answer to the said interrogatory, numbered 2, so excluded, was as follows:

'We had in use on our passenger equipment at this date disc buffer Janney platforms and couplers; we also had in use the Janney Buhoup platforms. These two styles of couplers comply with the Safety Appliance Act passed by the United States Congress, and were in general use on well regulated railroads in the United States.'

To which ruling of the court sustaining the said objection on the third ground, and refusing to permit said answer to be read, the said defendant then and there excepted.

The plaintiff also objected to interrogatory number 3, which is as follows:

'Please state whether or not well regulated railroad companies operated their trains, and especially local trains, without the use of such buffers on or about said date and prior and subsequent thereto?'

The objection to the said interrogatory was upon the following grounds:

1. It relates to matters not within the issue.

2. It restricts the inquiry to the class of local trains operated by well regulated railroad companies, about which there is no issue.

And the said judge did then and there sustain said objection to the effect that the interrogatory restricts the inquiry to the class of local trains operated by well regulated railroad companies about which there is no issue; and the said judge refused to permit the answer to said interrogatory, and the said interrogatory, to be read in evidence. The answer so excluded is as follows:

'A. Yes; well regulated railroad companies operated

their trains, and especially local trains, without the use of such buffers on or about this date.'

To which ruling of the court sustaining the said objection to said interrogatory, and excluding said interrogatory and answer from the evidence, the defendant did then and there except."

No authorities are cited by defendant in support of these assignments, and they are but slightly argued. Suffice it to state that we find no reversible error in these rulings. Defendant had practically the benefit of the same testimony from H. A. Ford and other witnesses. There is no conflict in the testimony as to the fact of the two cars in question having been coupled or connected by a disc buffer Janney platform and couplers and a Janney Buhoup platform and couplers, one make being on one car and one make on the other.

The twentieth, twenty-first, twenty-second, twenty-third, twenty-fifth and twenty-seventh assignments are all based upon the giving of certain instructions, at the request of plaintiff, exceptions being noted to the respective instructions so given, the same being numbered 1, 2, 3, 5, 8 and 12, which are as follows:

1. "This is a suit brought by Ethel Crosby, a minor, by her next friend, J. W. Crosby, against the Atlantic Coast Line Railroad Company, in which the plaintiff sues the railroad company for damages alleged to have been sustained by her on the 19th day of September, 1902, and that said damages were occasioned by the running of the locomotive and cars of the defendant.

The court charges you that in this State a statute, chapter 4071 of the Laws of Florida, that a railroad company is liable for any damages done to persons, stock or other property by the running of the locomotives or cars

or other machinery of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company, and if you find from the evidence that the plaintiff, Ethel Crosby, was damaged by the running of the locomotive or cars or other machinery of the defendant company, then and in that case a presumption arises which the court instructs you should entitle the plaintiff to recover, unless you find from the evidence that the agents of the railroad company have exercised all ordinary and reasonable care and diligence."

2. "If you find from the evidence that at the time Ethel Crosby, the plaintiff, was hurt that she was a minor girl child, the court instructs you that you may find from the evidence as a matter of fact whether at the time the child was hurt she was capable of taking reasonable care of herself or whether she was of such tender age as not to be responsible for her acts or conduct."

3. "A passenger on a railroad train, after said train has stopped at a regular station, has a right to go upon the platform of the coach in which the said passenger may be, and within the time allowed by the rules of the company for the stopping of said train at said station, providing the said passenger being on the said platform does not interfere with the proper management of said train and with persons alighting therefrom or getting thereon, and that it is not negligence *per se* so to do, and that the mere fact of the passenger being upon the platform under such circumstances does not constitute negligence on the part of the passenger."

5. "The defendant in this action has filed pleas of contributory negligence on the part of the plaintiff. The

court instructs you that if you find from the evidence
that the plaintiff, at the time of the accident, was a child
of tender years, and by reason of her youth she was
incapable of taking care of herself, that in that event
the court charges you that the said child is not respon-
sible in law for any negligence in her own conduct, if you
find from the evidence that there was any negligence or
lack of apprehension or reasonable prudence on the part
of the plaintiff."

8. "The second section of chapter 4071 of the Laws of
Florida, in relation to the liability of railroad companies
in certain cases, provides 'that no person shall recover
damages from a railroad company for injury to himself or
his property where the same is done by his consent or is
caused by his own negligence. If the complainant and
the agents of the company are both at fault, the plaintiff
may recover, but the damages shall be diminished or
increased by the jury in proportion to the amount of the
default attributable to him;' that is to say, if you find
from the evidence that the plaintiff in this case was dam-
aged by the running of the locomotives, cars or other
machinery of the defendant, and that the said company
has not exercised all ordinary and reasonable care and
diligence, you must find for the plaintiff, notwithstanding
the fact you may also find that the plaintiff and the
defendant's agents are both at fault. That this conduct
would not defeat a recovery by the plaintiff, and would
only go in diminution of the damages sustained by the
plaintiff."

12. "You are further instructed that if, while the pas-
senger cars were standing at Juliette, the plaintiff and
her mother were, for convenience and comfort, standing
upon the platform of the said cars, and that the defendant

negligently and violently caused said train of cars upon which the plaintiff was a passenger to be struck by an engine with sufficient force to injure the plaintiff, and did so without notice or warning to the plaintiff, her mother and the other passengers, then the defendant is respsonsible for all injuries resulting to the plaintiff therefrom."

It is urged by defendant that the first instruction "is simply an abstract proposition of law and is misleading when applied to this particular case, as it fails to limit the consideration of the jury to the specific acts of negligence complained of." No authorities are cited to support this contention. It is not and could not successfully be contended that the instruction is not correct in the abstract, simply reciting, as it does, section 1 of chapter 4071 of the Laws of 1891, and properly construing the same. See Morris v. Florida Cent. & P. R. R. Co., 43 Fla. 10, 20 South. Rep. 541; Consumers Elec. L. & S. Ry. Co. v. Pryor, 44 Fla. 354, 32 South. Rep. 797; Jacksonville Electric Co. v. Adams, 50 Fla. 429, 39 South. Rep. 183. As was said by this court in Keech v. Enriquez, 28 Fla. 597, 10 South. Rep. 91: "Where an instruction, as far as it goes, states a correct proposition of law, but is defective because it fails to qualify or explain the proposition it lays down in consonance with the facts of the case, such defect is cured if subsequent instructions are given containing the required qualifications or exceptions."

We find that in the thirteenth instruction, given at the request of plaintiff, as well as in instructions given at the instance of defendant and in charges given by the court of its own motion, any defect which might have existed in this first instruction was supplied, so that no

harm could have resulted to defendant from the broadness of such instruction. Keech v. Enriquez, 28 Fla. 597, text 609, 10 South. Rep. 91, text 92. This is in line with the established principle that "it is the rule in this court that in determining the correctness of charges they must be considered as a whole; but where a special charge in itself announces a patently erroneous proposition of law, it must affirmatively and clearly appear that the presumptive harm caused thereby has been entirely removed, or the judgment should be reversed." Lane v. State, 44 Fla. 105, text 120, 32 South. Rep. 896, text 900. Also see Knight v. State, 44 Fla. 94, 32 South. Rep. 110; Ward v. State, 51 Fla. 133, 40 South. Rep. 177. As is said in Hughes' Instructions to Juries, section 70: "It is a familiar rule that in passing upon a single instruction it must be considered in connection with all the other instructions bearing on the same subject, and if, when thus considered, the law appears to have been fairly presented to the jury, the court will not entertain complaint because the instruction complained of does not contain all the law relating to the particular subject; unless under all the peculiar circumstances of the case the court is of the opinion that it is misleading." Also see the residue of this section and the following two sections, 71 and 72, and numerous authorities cited in the notes. Also see Mathis v. State, 45 Fla. 46, 34 South. Rep. 287; Starke v. State, 49 Fla. 41, 37 South. Rep. 850; Jacksonville Electric Co. v. Sloan, and Seaboard Air Line Ry. Co. v. Scarborough, each decided here at the last term, which are in harmony with the foregoing principle. Miss. Cent. R. R. Co. v. Hardy (Miss.), 41 South. Rep. 505, will prove instructive upon this point.

What we have just said in disposing of the assignment

based upon giving the first instruction requested by plaintiff applies with equal force to the assignment based upon the giving of the second charge at plaintiff's instance. This instruction states the law correctly, so far as it goes, and the thirteenth instruction given at plaintiff's instance, as well as other instructions given both at plaintiff's and defendant's request and by the court of its own motion, fully and correctly set forth the law applicable to this particular subject; therefore the jury could not have been misled thereby, and defendant's contention is without merit. We content ourselves with referring to the authorities there cited.

It is urged by defendant in support of the twenty-second assignment, which is based upon the giving of the instruction numbered 3, at the request of plaintiff, that such charge is erroneous "in that it declares as a matter of law that a passenger 'has a right to go upon the platform of the coach' under the circumstances stated in the instruction. The question, therefore, as to whether there would be negligence in so doing is by this charge removed from the consideration of the jury," and therefore the court in such charge invaded the province of the jury. If this instruction stood alone and were the only instruction given upon the point embraced therein, it probably would be subject to this criticism; but read in connection with the other instructions and charges given, particularly the twelfth and thirteenth instructions given at plaintiff's request and the charges given by the court of its own motion when the jury came in from the jury room and requested to be further instructed as to what right they could consider a passenger had on the platform of the car when it was not in motion, not to mention still other instructions given embracing the law covering this

point, we cannot see how the jury could have been misled by this instruction. See authorities already cited in disposing of the errors based upon the giving of the first instruction at plaintiff's request. Also see the authorities cited in this opinion in disposing of the first assignment. This instruction was copied, with only slight verbal changes almost trivial in their nature, from an instruction given by the trial court and approved by the Supreme Court of Appeals in Southern R. R. Co. v. Smith, 95 Va. 187, 28 S. E. Rep. 173, which case will prove quite instructive. Also see McCurrie v. Southern Pac. Ro., 122 Cal. 558, 55 Pac. Rep. 324, S. C. 5 Amer. Neg. Rep. 117, 12 Amer. & Eng. R. R. Cas. (N. S.) 170. It must also be borne in mind all the way through that plaintiff was a minor and as to whether or not at the time of such injury she was of such tender age she was incapable of taking care of herself and of exercising reasonable prudence and forethought was a question for the jury to determine, and if the evidence established that she was of such tender age she could not be guilty of any contributory negligence. The law makes a broad distinction between adults, or persons of such age as to be capable of taking care of themselves and of exercising reasonable prudence and forethought, and infants who have not reached such age of discretion, and the court instructed the jury as to this principle. See Birmingham Ry. Light & Power Co. v. Jones (Ala.), 41 South. Rep. 146, and authorities therein cited.

What we have just said and the authority last cited disposes of defendant's contention as to the erroneous nature of the fifth instruction given at plaintiff's request adversely to it, and it becomes unnecessary to say more on that point.

Likewise the foregoing discussion and the authorities cited dispose of adversely to defendant the twenty-fifth assignment, based upon the giving of the eighth instruction at plaintiff's request.

This is also true of the twenty-seventh assignment based upon the giving of plaintiff's twelfth requested instruction.

The twenty-fourth assignment is abandoned, and the twenty-sixth assignment is not argued, and, under the settled practice of this court, we treat it as abandoned.

The twenty-eighth assignment is based upon the giving of the thirteenth instruction requested by plaintiff, which is not argued by defendant in the brief, the statement contained therein being that such "assignment is reserved for oral argument, and if not then insisted upon will be considered abandoned." It was referred to and slightly insisted upon by defendant in its oral argument, but not to any extent, and no especial point was made thereon. Such instruction is as follows:

13. "The plaintiff here sues the defendant for damages alleged to have been sustained by reason of the defendant's negligence in failing to exercise all ordinary and reasonable care and diligence in operating its railroad train, in running its locomotive backward against the train of cars on which the plaintiff then was without giving to the plaintiff any notice, signal or warning that said locomotive was about to be so run back against said cars, also in running and driving its engine against said cars with great violence and force, and also in failing to provide and use on and between its said passenger cars an appliance known as a buffer iron, which is alleged to be a metal plate covering the space or opening between

30—S C

the ends or buffers of cars used for passengers, and which is alleged to be necessary for the safety of passengers occupying the platforms and getting on and off said cars, and alleged to be generally and commonly used by common carriers and railway companies as a means of protection and safety to passengers.

The defendant by its first plea denies the negligence alleged by the plaintiff. If you find from the evidence that at the time and place alleged in the declaration the plaintiff was injured in the manner alleged in her declaration, then it will be your duty to find a verdict in favor of the plaintiff, unless it shall appear to you from the evidence that the railroad company exercised at the time all reasonable and ordinary care and diligence in operating its locomotive, cars or machinery.

The defendant by its second and third pleas alleges that the plaintiff at the time of the alleged injury did, or was doing, certain acts which constituted negligence on her part, and which should, in case she is awarded a verdict in this case, require a reduction of the damages which may be awarded her.

The court charges you that if you find from the evidence that the plaintiff, while the train in question was standing still at Juliette, a station on said road, and while the said train was there waiting, according to the general custom or regular schedule, for another connecting train on said road, went for any reasonable purpose upon the car platform and was injured while there, through the negligence of the defendant, then the mere fact that the plaintiff was on said platform, and not inside of the car, would not of itself constitute negligence on the part of the plaintiff, and would not bar her right to recover in this case.

If, therefore, you find from the evidence that the plaintiff, Ethel Crosby, while so standing on the platform of the car, and while said car was so standing and waiting at said station, through the negligence of the defendant as alleged in her declaration, was injured in the manner alleged, you should find a verdict in her favor.

If you should find from the evidence that the plaintiff, Ethel Crosby, while so standing on the platform of said car, and while it was so waiting and standing at Juliette, was injured as aforesaid by reason of the defendant's negligence, as alleged, and if you should further find that at the time of said injury the plaintiff, Ethel Crosby, did, or was doing, any of the acts which are alleged in the defendant's second and third pleas, and that such act or acts contributed, in connection with the defendant's negligence, to the happening of the injury, in other words, if you believe from the evidence that both parties were at fault, then the law requires that the damages, if any, shall be diminished or increased by you in proportion to the amount of default attributable to the plaintiff.

But on this point you are further instructed that before you will be authorized to find that Ethel Crosby, the plaintiff, did any act or acts constituting contributory negligence, and which should be considered by you in that relation fixing or awarding any damages which you may award, it would be necessary for you to believe from the evidence that Ethel Crosby at the time of the injury alleged was of sufficient age and had sufficient mental capacity to make her realize and to be responsible for her acts."

We have copied it in full for the reason that we have had occasion to refer to it in treating other assignments. This instruction was excepted to as an entirety, both at

the time it was given and in the motion for a new trial. It is settled law in this court that where an instruction or a charge contains two or more distinct propositions of law, and such instruction or charge is excepted to as an entirety, such an exception must fail if any one of such propositions is correct. See Wood v. State, 31 Fla. 221, 12 South. Rep. 539; May v. Gamble, 14 Fla. 467, text 492; John D. C. v. Julia, 16 Fla. 554; Dupuis, v. Thompson, 16 Fla. 69; Burroughs v. State, 17 Fla. 643; Carter v. State, 20 Fla. 754; Post v. Bird, 28 Fla. 1, 9 South. Rep. 888; Pinson v. State, 28 Fla. 735, 9 South. Rep. 706; Smith v. State, 29 Fla. 408, 10 South. Rep. 894; Campbell v. Carruth, 32 Fla. 264, 13 South. Rep. 432. It is apparent at a glance that such instruction so given contains two or more distinct propositions of law. It is not obvious that any one of such propositions is erroneous, and such error, if any exists, has not been pointed out to us. We are not required to do more in such a case than to examine the instruction sufficiently to determine that no error is apparent therein. Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep 656; Thomas v. State, 47 Fla. 99, 36 South. Rep. 161. It is the duty of a party resorting to an appellate court to make the errors complained of clearly to appear. Florida Land Rock Phosphate Co. v. Anderson, 50 Fla. 501, 39 South. Rep. 392, and authorities there cited; Hoodless v. Jernigan, 51 Fla. 211, 41 South. Rep. 194; Worley v. Dade County Security Co., decided here at the last term. However, it is plainly apparent that at least one of the propositions contained in this instruction is correct; therefore this assignment must fail.

The twenty-ninth to the thirty-second assignments, inclusive, are predicated respectively upon the refusal of the court to give the first, fifth, seventh and tenth instruc-

tions requested by defendant. There are no instructions numbered 5 and 7 requested by defendant set out in the bill of exceptions, or indeed anywhere in the transcript; therefore the thirtieth and thirty-first assignments are not before us for consideration, as we are not informed what these requested instructions were. This leaves for consideration only the first and tenth instructions requested by defendant. We do not copy these two instructions, for the reason that we see no useful purpose to be accomplished in so doing. Suffice it to say that we have carefully examined them, and are of the opinion that, in so far as they state correct propositions of law, such propositions were fully covered by instructions given at the request of plaintiff as well as by other instructions given at defendant's request, and by the charges given by the court of its own motion. No error was committed in refusing them. Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516: Seaboard Air Line Railway v. Scarborough, decided here at the last term; Jacksonville Electric Co. v. Schmetzer, decided here at the present term.

The thirty-third to the thirty-seventh assignments, inclusive, are based respectively upon the giving of the first to the fourth charge, inclusive, by the court of its own motion, and the giving of the additional charge by the court of its own motion after the jury had retired to consider of their verdict, at their request for further charges as to what right they could consider a passenger had on the platform of the car when it was not in motion, which charge we have numbered 5 for convenience in referring to it, and all of which charges so excepted to are as follows:

1. "The court having read to you the charges given as

requested by the plaintiff and defendant, I now charge you on the law of this case as I have prepared.

Under the law and the issues in this case the court charges you that you are to determine first whether the plaintiff has suffered any damage by the running of its locomotive or cars of defendant.

If the plaintiff has shown this, then the law requires the defendant must make it appear that their agents have exercised all ordinary and reasonable care and diligence, and in determining this question, that is whether or not the railroad company by its agents have exercised all ordinary and reasonable care and diligence, and in determining this the presumption in all cases being against the company. Your first duty is to determine for whom you will find a verdict, the plaintiff or the defendant. If the plaintiff has shown that she was damaged by the running of the locomotive or cars of the defendant company, and the company have not made it appear that their agents have exercised all ordinary and reasonable care and diligence, then you will find a verdict for the plaintiff.

If the plaintiff has shown that she was damaged by the running of the locomotive or cars of the defendant, and the railroad company have made it appear that their agents exercised all ordinary and reasonable care and diligence, then you will find a verdict for the defendant."

2. "If you find from the evidence that the plaintiff was damaged by the running of the cars or locomotives of the defendant railroad company, and the railroad company have made it appear that the agents of the company have exercised all ordinary and reasonable care and diligence in the running of its locomotive or cars, and that the damage was caused by her own negligence, then you will find a verdict for the defendant."

3. "If you find from the evidence that the plaintiff was damaged by the running of the locomotive or cars of the defendant, and you find from the evidence that the plaintiff and the agents of the company are both at fault, then you will find a verdict for the plaintiff, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to each.

If you find from the evidence that at the time of the injury the plaintiff was a child of tender years, and was incapable of taking care of herself, the law does not permit you to impute negligence to her, and if she was attended by her mother, the negligence of the mother cannot be imputed to her. But this does not mean that simply because she is a small child of tender years and was damaged by her own negligence, or the negligence of her mother, that these facts alone make the railroad company liable, but in the matter of contributory negligence on the part of the child the court instructs you that the law is that when it is shown that the plaintiff was damaged by the running of its cars or locomotives, then the burden is on the railroad company to show that its agents have exercised all ordinary and reasonable care and diligence, and what is all ordinary and reasonable care and diligence must depend on the facts and circumstances of each case, and must necessarily vary under different circumstances of each case.

The degree of diligence to be used should be strictly commensurate with the demands and exigencies of the occasion, and with the relation which the defendant bears to the party in question. In considering the demands and exigencies of the occasion you are to consider all the facts and circumstances; the convenience of the coaches, the purpose for which coaches and platforms are used,

the usual course of business of the defendant, the mother being in charge of the child, the age of the child and any other fact in evidence that will aid you to determine the demands and exigencies of the occasion.

If after considering all of these facts and circumstances you determine that the company on this occasion did exercise all ordinary and reasonable care and diligence, you must find a verdict for them; but if they have not made it appear that they did exercise all ordinary and reasonable care and diligence, you will find for the plaintiff, even though the defendant might have contributed to the damage, and allow such damages as the degree of negligence on the part of the defendant appears to you to be reasonable and just."

4. "The railroad company is bound to use all suitable, safe and proper appliances for the safety and convenience of its passengers and such as, or good as, is used on all well regulated railroads, and it is negligence not to do so.

They have a right to expect of passengers that they will use all such appliances for their safety and convenience in the manner they are intended, and a platform of a railroad is primarily intended to get off and on trains in a convenient and easy manner. It is not a place of safety on a train in motion, nor intended for passengers to ride on; but passengers have a right to go on, or even stand on, the platform, and in their doing so does not justify the company in any act of negligence on its part, but it is a fact that you should consider in determining whether negligence existed or not on the part of the defendant."

5. "The platform of the car is intended primarily for safe getting off and on the cars. This does not prohibit persons standing on the platform while it is still. The

company must give reasonable notice of its intention to move or start or jolt a car standing still.

Passengers are required to take notice of the schedule, custom of the company at a particular point, and to observe the rules and regulations of the company. The law does not provide and define in terms the rights of a passenger on the platform, nor fix any time that he may remain thereon, but this must be determined by the facts and circumstances in each case."

We are of the opinion that the first charge given by the court was somewhat confused and obscure, and that its tendency was to mislead the jury and have a prejudicial effect upon defendant. The statute, chapter 4071, Laws of 1891, as we have already had occasion to discuss in considering some of the other assignments, creates the presumption that a person injured by the operation of a railroad was thus injured through the negligence of such road. See authorities cited in this opinion under the discussion of the twentieth assignment, which was based upon the giving of the first instruction at the request of plaintiff, and also the eleventh assignment. This presumption ceases when the railroad company has made it appear that its agents have exercised all ordinary and reasonable care and diligence. In the presence of such proof by the railroad company, if the same has been adduced, the jury do not take any such presumption with them to the jury room in weighing the evidence and in coming to a determination. The statute does not create such a presumption as will outweigh proofs, or that will require any greater or stronger or more convincing proofs than any other question at issue. All that the statute does is to cast upon the railroad company the burden of affirmatively showing that its agents exercised all

ordinary and reasonable care and diligence, and here the statutory presumption ends. The instruction was misleading in that it tended directly to create in the minds of the jury the impression that in weighing the evidence the presumption was always against the defendant rail-road company. At the next trial the charge can easily be modified so as to conform to the views herein expressed.

We find no errors in the other charges given .by .the court of its own motion, upon which assignments are based.

The thirty-eighth assignment is based upon the refusal by the court to give the following instruction requested by defendant, when the jury had come in from .the jury room and requested further instructions: "That the platforms of the cars are intended for the use of passengers in getting on and off the cars, and for no other purpose, and passengers have no right to stand or loiter upon the platform, either while the cars are in motion or while standing still, and if they do so they assume all risks incident to the regularly and orderly operating of the train."

This instruction is too broad and is calculated to mislead the jury. The law relating thereto was more correctly stated in the twelfth instruction given at the request of plaintiff, which forms the basis for the twentieth assignment, and in the third, fourth and fifth charges given by the court of its own motion. It may be well to state, and may serve to make this opinion more intelligible, that the following facts seem to be conclusively established by the evidence. The injury happened to plaintiff at the time and place alleged in the declaration, to wit, on the 19th day of September, 1902, on the platform of the passenger train .of defendant at Juliette, a

regular station on defendant's road, while defendant's train was awaiting there the arrival of another one of defendant's trains; that plaintiff was ten years of age on the 27th day of January in the year following the accident, which would be January, 1903; that the train waited at Juliette for a period of some little time, ten to thirty minutes, the witnesses differing as to the time and none being positive as to the duration, during which period the engine was detached from the train on which plaintiff was a passenger and moved to another track, leaving the two passenger coaches standing still; that the train reached Juliette in the afternoon, probably shortly after 4 o'clock; that it was hot and uncomfortable in the passenger coach in which plaintiff and her mother were traveling, as neither the windows in the coach could be raised nor the blinds pulled down by plaintiff or her mother, though they tried most of them; therefore the sun shone through the windows into the coach; and while the passenger coaches were so standing still the plaintiff and her mother went out upon the platform and stood thereon, in order that they might be cooler and more comfortable. This explains how the plaintiff happened to be upon the platform of the train and shows the applicability of the instructions given to which we have just referred.

We have now disposed of all the assignments except those relating to the sufficiency of the evidence to sustain the verdict, and, as the judgment will have to be reversed for the errors pointed out, it would neither be proper nor advisable for us to express any opinion on such assignments.

We regret the necessity of this lengthy opinion, but it has simply been unavoidable. Forty-one errors are assigned, nearly all of which are argued and insisted

upon. We call attention again to the remark made by Mr. Justice BREWER in Fidelity and Deposit Company v. L. Bucki & Son Lumber Company, 189 U. S. 135, text 138, 23 Sup. Ct. Rep. 582, quoted by us in Seaboard Air Line Railway v. Scarborough, decided here at the last term. We also fully approve of what we said in Gracy v. Atlantic Coast Line R. R. Co., decided here at the present term, as to the practice of requesting an unnecessarily large number of instructions.

Judgment reversed.

COCKRELL and WHITFIELD, JJ., concur;

TAYLOR and PARKHILL, JJ., concur in the opinion.

———

HOCKER, J.: I concur in the opinion rendered by the Chief Justice, except in the following particulars: It is not contended here by the plaintiff in error that it was entitled to put in evidence the declaration of Mrs. Crosby "that it was all her fault," under its pleas, irrespective of whether it was legally proper testimony. I do not think that Mrs. Crosby's alleged declaration can be regarded as a part of the res gestae. The alleged declaration did not purport to state any fact bearing on the issues. It did not purport to state any fact at all, but merely her opinion putting the blame on herself. What she omitted to do that she ought to have done, or what she did which she ought not to have done, we are not advised. I do not think the negligence of the mother should have been submitted to the jury. It was not a fact legally and properly

in issue. 16 Cyc. 1241, *et seq.;* Jacksonville Electric Co. v. Adams, 50 Fla. 429, 39 South. Rep. 183. I admit the correctness of the statement of the opinion that a railroad company does not owe the same degree of care to a child of tender years on its train in the charge of its mother, or other adult, that would be due from it to such child unaccompanied, or not in charge of an adult. But I do not conceive that the degree of care due from the railroad company to a child can be proven by the mother's negligence. It is properly proven by the mere fact that the child is in charge of its mother, or other adult person, and whether the latter is negligent or not does not affect the duty of the railroad company, unless its agents know or have reason to believe that the mother, or other adult in charge of the child, is not caring for the child, or will not do so.

It is true that the interrogatories addressed to W. B. Denham were objectionable in asking for information about local trains and the use of buffer plates on them. But his answers were apparently before the judge at the time of his ruling, and the first answer seems to be absolutely unobjectionable. The witness was not present. When the objections were made is not clearly apparent. It seems to me under the circumstances the question and answer taken together should have been permitted to stand, for taken together there is clearly no error in them.